**In the Matter of the ADOPTION OF BGH, a Minor.**

**GWJ, Appellant,**

v.

**MH and MWH and MDH and BGH, Appellees.**

**No. C–95–14.**

Supreme Court of Wyoming.

Dec. 23, 1996.

LaVoy O. Taylor, Cokeville, for Appellant.

James E. Phillips of Phillips & Lancaster, P.C., Evanston, for Appellee MH.

F.L. Thomas, Jr., Kemmerer, for Appellees MWH and MDH.

Gerald L. Goulding, Afton, Guardian ad Litem for BGH.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN* and LEHMAN, JJ.

THOMAS, Justice.

The focal question in this case is whether the statutes relating to the termination of parental rights, Wyo.Stat. §§ 14–2–101 to – 120 (1994), must be invoked in order to terminate the rights of a biological father instead of the statutory grounds provided in an adoption proceeding brought pursuant to Wyo.Stat. §§ 1–22–101 to –116 (1988). There are two collateral issues relating to the trial court's application of Wyo.Stat. § 1–22–108(c): First, whether the trial court committed an abuse of discretion when it found that the biological father "evidenced an interest in," but failed to evidence "responsibility for the child" within the requisite statutory time frame; and second, whether the trial court applied the "best interests * * * of the child"

* Chief Justice at time of oral argument.

factor to the exclusion of other statutory factors. The final claim of error asserts gender bias in the trial court's decision that violated the rights of the biological father and his child to equal protection of the law afforded by the Fourteenth Amendment to the Constitution of the United States. We hold the trial court correctly invoked the adoption statutes in this instance, and no other error, as claimed by the biological father, is present in the record. The Final Decree of Adoption is affirmed.

In his Brief of Appellant, GWJ, the biological father, states the issues as follows:

Did the Court abuse its discretion when it held the Appellant did assert an interest in, **but did not** assert responsibility for Baby Girl [H] within thirty (30) days after Baby Girl [H]'s birth?

Did the Court error in applying W.S.Ann. § 1–22–108, by giving it preference over W.S.Ann. § 14–2–401[sic] thru § 14–2–120?

Did the Court error in applying the "best interest" test in this case in deciding to grant the adoption and terminating the Appellant's parental rights?

Did the District Court violate the Appellant, [GWJ]'s and the Appellee, Baby Girl [H]'s equal protection clause of the 14th Amendment to the U.S. Constitution when it terminated the Appellant's parental rights by granting the adoption of Baby Girl [H]?

The Brief of Appellees, MWH and MDH (Petitioners to adopt), in which the natural mother MH, joins, frames the issues before the court in this way:

I. Did the District Court abuse its discretion when it held that within 30 days after receiving notice of the birth of BGH, the putative father, GWJ, evidenced an interest in, but did not evidence responsibility for the child?

II. Did the District Court err in applying the adoption statutes (W.S. 1–22–101 thru 1–22–116) rather than the paternity statutes (W.S. 14–2–101 thru 14–2–120)?

III. Did the District Court err in applying the "best interest of the child" test?

IV. Did the District Court violate GWJ's and BGH's right to the equal protection of the laws under the 14th Amendment to the U.S. Constitution?

In the Brief of Baby Girl [H], Filing by Her Guardian *Ad Litem*, a third version of the issues is stated:

(1) Did the District Court abuse its discretion in making its factual conclusion that [GWJ] did not "evidence . . . responsibility for the child within thirty (30) days after receiving notice of the pending birth or birth of the child . . . ." under W.S. 1–22–108(c)(ii)? (Unless otherwise cited all statutory references are to the Wyoming Statutes).

(2) Did the District Court err in determining that 1–22–108 should be applied in this case?

(3) Did the District Court err in determining that it should consider the "best interests and welfare of the child" (1–22–108(c)(iv)) in deciding whether to grant the adoption?

(4) In granting the adoption, did the District Court violate [GWJ]'s and Baby Girl [H]'s right to equal protection under the laws pursuant to the 14th Amendment to the U.S. Constitution and the Wyoming Constitution?

GWJ and MH met when they were both seventeen, and they soon became sexually intimate. In late June or early July 1994, MH informed GWJ she was pregnant. GWJ indicated his preference that MH give birth to, and care for, the baby. He did not want anyone else raising his child and preferred that MH have an abortion rather than give the baby up for adoption.

At about the third month of her pregnancy, GWJ proposed marriage to MH, and later, gave her an engagement ring. During their engagement, MH furnished money to GWJ, but he did not give her any money. GWJ did not assume any financial responsibility for MH or offer any support. Once, GWJ did take MH to the doctor, and he gave her a baby seat and clothes for the baby. In all other instances, MH's foster mother took her to medical appointments and generally provided all other care and assistance. When she was approximately five months pregnant, MH was seriously injured in a one-car accident in which GWJ was the driver. She was hospitalized for two weeks, and during that period, the engagement was terminated. GWJ and MH never married, and the State of Utah paid for prenatal care for MH. Even though GWJ was employed, he did not contribute to the care or support of MH or the unborn child.

MH chose to deliver the baby in Wyoming because she believed an adoption could be accomplished here without the consent of GWJ. MH had decided to give the baby to MWH and MDH for adoption. GWJ learned of the birth of BGH from the attorney for MWH and MDH when he received a letter requesting his consent for adoption. Subsequently, GWJ employed an attorney and filed a paternity action pursuant to Wyo.Stat. §§ 14–2–101 to –120. GWJ also contested the adoption. He participated in a DNA test, for which he paid the expense of $575. The result of the test demonstrated he was the biological father at a 99.999% probability level. GWJ also furnished his bedroom in his parent's home with a crib, and he provided toys, clothes, and pictures. Hearings in the matter were conducted by the district court on May 1, 1995 and July 10, 1995, during which evidence was presented in accordance with Wyo.Stat. § 1–22–108(c). Later, the court entered a Final Decree of Adoption terminating the parental rights of MH and GWJ and granted the petition for adoption filed by MWH and MDH. GWJ has appealed from that Final Decree of Adoption.

■ The threshold claim of error asserted by GWJ is that the district court erred in invoking the adoption statutes, Wyo.Stat. §§ 1–22–101 to –116, and failed to apply the provisions of the paternity statutes, Wyo. Stat. §§ 14–2–101 to –120. GWJ contends, once he filed an action to establish his paternity, his parental rights could be terminated only by proceeding under Wyo.Stat. § 14–2–309 (1994)[1] and could not be terminated as

1. Wyo.Stat. § 14–2–309 (1994) provides:

(a) The parent-child legal relationship may

provided in Wyo.Stat. § 1–22–108. In arguing this point, GWJ relies upon language from *Matter of Adoption of GSD,* 716 P.2d 984, 987 (Wyo.1986), where we said: "But the more liberal adoption test of § 1–22–108 applies to only those adoptions contested by putative fathers who have already shown their lack of concern for their children by failing to establish legal paternity." GWJ contends he has shown concern for his baby daughter by endeavoring to establish his paternity, and for that reason, the paternity statutes must govern over the adoption statutes.

The resolution of this question flows by analogy from *GSD.* There, we considered an assertion by a father seeking adoption of a stepdaughter that a putative father had no standing because he had failed to establish his paternity as required by Wyo.Stat. § 14–2–105. We held the special legislation represented by the adoption statute controlled over the general rules relating to establishment of paternity, and the putative father had standing in the adoption proceeding. The conclusion that must be drawn from *GSD* is that the adoption statutes control over the more general provisions found in the paternity statutes. In addition to providing for the termination of parental rights for the reasons articulated in Wyo.Stat. § 14–2–309, the legislature has provided for the termination of parental rights through the adoption procedure.

There was no necessity to establish GWJ's paternity because all parties agreed that he was the natural father, therefore, the question of paternity was not an issue in the case. Had paternity been contested, GWJ would have met the definition of a putative father

articulated in Wyo.Stat. § 1–22–101(a)(iv), as "the alleged or reputed father of a child born out of wedlock, whether or not the paternity rights and obligations of the father have been judicially determined * * *." Reliance upon *GSD* by GWJ is misplaced.

In his first and third issues, GWJ contends the district court did not properly apply Wyo. Stat. § 1–22–108(c). He argues the district court committed an abuse of discretion in its application of sub-paragraph (ii) when it found he had asserted an interest in the child, but he had not accepted responsibility for the child. GWJ contends his acceptance of responsibility for BGH was demonstrated by filing his Petition to Establish Paternity. He notes the language of Wyo.Stat. § 14–2–113(c) that "[t]he judgment or order may direct the father to pay the reasonable expenses of the mother's pregnancy and confinement", and he asserts that made him a responsible party as a matter of law.

Our holding, that this case is controlled by the adoption statutes and is not impacted by the statutes relating to paternity, causes GWJ's analysis of Wyo.Stat. § 14–2–113(c) to be inapt. The applicable statute is Wyo. Stat. § 1–22–108(c) (emphasis added), which requires that:

> (c) If the putative father files and serves his objections to the petition to adopt as provided in subsection (b) of this section, and appears at the hearing to acknowledge his paternity of the child, the court shall hear the evidence in support of the petition to adopt and in support of the objection to the petition and shall then determine whether:

be terminated if any one (1) or more of the following facts is established by clear and convincing evidence:

 (i) The child has been left in the care of another person without provision for the child's support and without communication from the absent parent for a period of at least one (1) year. In making the above determination, the court may disregard occasional contributions, or incidental contacts and communications;

 (ii) The child has been abandoned with no means of identification for at least three (3) months and efforts to locate the parent have been unsuccessful;

 (iii) The child has been abused or neglected by the parent and efforts by an authorized agency or mental health professional have been unsuccessful in rehabilitating the family or the family has refused rehabilitative treatment, and it is shown that the child's health and safety would be seriously jeopardized by remaining with or returning to the parent;

 (iv) The parent is incarcerated due to the conviction of a felony and a showing that the parent is unfit to have the custody and control of the child.

(i) The putative father's claim to paternity of the child is established;

**(ii) The putative father having knowledge of the birth or pending birth of the child has evidenced an interest in and responsibility for the child within thirty (30) days after receiving notice of the pending birth or birth of the child;**

(iii) The putative father's objections to the petition to adopt are valid; and

(iv) The best interests and welfare of the child will be served by granting the putative father's claim to paternity or by allowing the petition to adopt.

The unanimous decision in *GSD*, 716 P.2d at 987, confirms the requirement that the district court must "base its decision on the manner in which the [four] factors balance." Because the decision must be the product of a balancing of these factors, none is entitled to more weight than any other. Our decision regarding GWJ's claims that the trial court abused its discretion in applying WYO.STAT. § 1–22–108(c) and in turning only to the "best interests test" must be premised on our review of the manner in which the district court weighed those four factors.

First, there is no question with respect to the establishment of GWJ's claim to paternity. When MH identified GWJ as the biological father, and when the appellant acknowledged BGH to be his child, a *prima facie* case of his claim to paternity was established. As articulated in WYO.STAT. § 1–22–108(d), he had a right to assert his paternity in the adoption proceeding because he was known and identified by MH as the natural father, and he acknowledged the child as his by affirmatively asserting paternity. Going even further, the district court proceeded to obtain DNA testing that established the probability of GWJ's paternity at a level of 99.999%. The district court recognized GWJ had established his paternity of the child for purposes of the proceeding, and that factor weighed in his favor.

Turning to the second factor, the argument of GWJ rests upon application of the phrase "has evidenced an interest in and

responsibility for the child." His position is that he had evidenced an interest in his daughter, as the trial court found, but he also evidenced responsibility for her. The relevant findings articulated by the court in its decision letter (emphasis added) are:

1. [MH] is not only the most sensible and mature of the two biological parents, but in addition she is the most credible. All conflicts between her testimony and the testimony of [GWJ] are resolved in favor of [MH]. The Court believes her testimony and finds the conflicting testimony of [GWJ] to be self-serving.

\* \* \*

3. [GWJ] learned of the pending birth of the child in late June or early July, 1994. \* \* \*

\* \* \*

In October, 1994, [GWJ] gave [MH] a[n] [engagement] ring; **but [GWJ] did not assume financial responsibility for either [MH] or his child. To the contrary, [MH] gave [GWJ] money.**

In October, 1994, [GWJ] took [MH] to the doctor; and just prior to their break-up, he gave [MH] a babyseat and some clothes for the child. The foster mother [of MH] transported [MH] to all other doctor appointments; and in general, provided all other care, aid and assistance.

\* \* \*

The parties never married; **the State of Utah paid for the prenatal care of [MH] and her child; and, although gainfully employed, [GWJ] did not contribute to the care or support of either [MH] or his unborn child.**

From these facts, the Court finds and concludes that within 30 days after receiving notice of the pending birth of the child, [GWJ] "evidenced an interest in" the mother; and collaterally, the child; and although he acknowledged that he was the father, he did not "evidence . . . responsibility for the child".

4. \* \* \*

After the baby was born, [GWJ] learned from the attorney for the adoptive par-

ents of the birth of the child as well as the pending adoption.

As a consequence, [GWJ] hired an attorney, commenced a paternity action and contested the adoption. In addition, he paid for DNA testing, visited the child and prepared living quarters for the child in his home, including the installation of a crib. **However, [GWJ] has not contributed to the support of the child and he has not paid, nor arranged to pay, for the delivery and postnatal medical care of the child.**

From these facts, the Court finds and concludes that within 30 days after receiving notice of the birth of the child, [GWJ] "evidenced an interest in . . . the child".

**By demanding custody of the child, he has demonstrated that he is willing to assume "responsibility" for the child; but he has not yet "evidenced" such responsibility by the payment of current medical bills, support and maintenance.**

* * *

6. * * *

Although [GWJ] acknowledges his legal responsibility for the child he has not yet discharged this responsibility in any meaningful fashion. For example, he acknowledges that he is legally responsible for support but he has paid none. He acknowledges he is responsible for medical care but he has not provided any. He installs a crib in his bedroom, together with children's pictures, but he provided no home for the child when it was being carried by its mother. [GWJ] hires a lawyer to file a paternity action and to contest adoption, but he has nothing to spare for the support and maintenance of the child.

In short, [GWJ] has evidenced his interest in protecting his status as a father, but he has not evidenced his responsibility as a father. The Court finds and concludes that [GWJ] has carefully done those things which protected his own rights and interest but he has not yet assumed or discharged the correlative responsibilities to the child which accompanies those rights.

In summary, the factors listed in *W.S. 1–22–108* to be balanced by the Court weigh heavily in favor of the adoptive parents. [GWJ] is the biological father of Baby Girl [H]; he has evidenced an interest in the child; and he has made himself legally responsible for the child; but all other factors weigh in favor of the adoption. [GWJ] has not yet discharged his legal responsibility in any significant or material respect, he has no valid objections to the adoption and the best interest and welfare of the child will be served by the adoption.

These findings are supported by GWJ's testimony in the record. He agreed he had not paid for any health care for MH, and he had made no offer of support or actual payment of support to MWH and MDH, the adoptive parents. He did assert a willingness to pay the medical expenses for BGH's birth if the adoption were unsuccessful.

 In *GSD*, 716 P.2d at 988 (emphasis added), we articulated principles applicable to contested adoptions saying:

Several principles which we have applied to contested adoptions under § 1–22–110 should apply equally under § 1–22–108. First,

" '[A]doption statutes are strictly construed when the proceeding is against a nonconsenting parent and every reasonable intendment is made in favor of that parent's claims.' "

"Such strict construction is mandated by the fact that parental rights are fundamental rights." (Citations omitted.) *Matter of Adoption of CCT*, [Wyo., 640 P.2d 73], supra, at 74–75 [ (1982) ], quoting *Matter of Adoption of Voss*, Wyo., 550 P.2d 481, 485 (1976).

Second, a district court's factual determinations in a contested adoption can be reversed only if the court has abused its discretion.

" 'A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. **In determining whether there has been an abuse of discretion,**

**the ultimate issue is whether or not the court could reasonably conclude as it did.** An abuse of discretion has been said to mean an error of law committed by the court under the circumstances.'" *Matter of Adoption of CCT,* supra, at 76, quoting *Martinez v. State,* Wyo., 611 P.2d 831, 838 (1980).

Our determination of whether the district court construed WYO.STAT. § 1–22–108, relating to whether GWJ evidenced responsibility for BGH within thirty days after he received notice of her pending birth or of her birth, must comport with these principles.

GWJ relied upon some nine pages from the trial transcript which are advanced to show he loves his child and has accepted responsibility commensurate with his obligation owed to the child even before her birth. GWJ states he has made monthly payments to the State of Utah for MH's medical bills for the injury she sustained in the car accident in which he was the driver. He provided baby clothes and a car seat for BGH. He furnished his bedroom with a crib, a baby bath, and pictures, including a picture of Jesus. He also obtained baby clothes and stuffed animals. He testified he paid $575 for the DNA testing. He made arrangements for child care for BGH while he was at work, and he filed an acknowledgment of paternity in Utah and a paternity action in Wyoming.

GWJ quotes *Matter of Adoption of BBC,* 831 P.2d 197 (Wyo.1992), for the proposition that an adoption cannot proceed when a father who does not consent to the adoption shows "interest in and responsibility for" the child. We distinguish *BBC* on its facts. There the father and mother lived together for a period of time, and the mother was supported, during her pregnancy, by the payment of $200 per week into a joint checking account from which she paid some of the doctor bills for prenatal care. Even though BBC's mother did not want to resume the relationship with the father after it was terminated, the father agreed to pay for the birth and provide child support if she kept the baby. The instant case is in contrast because GWJ did not pay for any prenatal bills or provide any meaningful support.

■ Our examination of this record leads to an ineluctable conclusion, and we so hold, that the district court reasonably could conclude, as it did, that GWJ evidenced an interest in BGH and manifested a willingness to assume responsibility for BGH. This record is equally clear GWJ did not "evidence * * * responsibility * * * " for BGH either by providing support and payment of medical bills for MH during her pregnancy and delivery, or the support and payment of any bills for BGH within thirty days after he received notice of the pending birth or within thirty days after her birth. The district court aptly stated, "[GWJ] protected his own rights and interests [as a father] but he has not yet assumed or discharged the correlative responsibilities to BGH which accompanies those rights." We hold the statutory language, "evidenced an interest in and responsibility for the child" is a unitary concept encompassing both factors. The district court did not abuse its discretion because it reasonably could conclude GWJ did not evidence responsibility for BGH. The second factor is to be weighed in favor of MWH and MDH.

■ Pursuant to WYO.STAT. § 1–22–108(c)(iii), the district court was required to determine whether GWJ's objections to the Petition to Adopt were valid and to then weigh such objections. The only factual objection asserted by GWJ, not discussed elsewhere in this opinion, is his objection to the fitness of the adoptive mother, MDH. In its opinion letter, the district court addressed that objection and said:

b. [GWJ] objects to the fitness of [MDH] as a parent. The Court adopts the response of the guardian ad litem:

[Counsel for GWJ] argues that "the IQ of [MDH] was about 70. With this in mind it is probable that the child will be much more intelligent than the adoptive mother and able to maneuver the mother at will in later years. Further, putting the child in the care of a person with an IQ of 70 could be dangerous to the child".

This is [GWJ]'s only factual objection to the adoption. [Counsel for GWJ] examined [MDH] at some length about her

capabilities and handicaps during the hearing on July 10, 1995. That testimony in and of itself proves by a preponderance of the evidence that this objection is not valid. [MDH]'s measured and clear responses demonstrated her considerable mental ability regardless of her tested IQ. Even [Counsel for GWJ] could not "maneuver [this] mother at will".... [The baby] is thriving under [MDH]'s care. She is not in danger. In fact, the testimony is that other families in Kemmerer have hired [MDH] to care for their children.

In future years when the child is beset with problems at school or with friends or with any of the other seemingly insurmountable obstacles of childhood, she will go to [MDH] for comfort and counsel. [MDH] will take the child in her arms and explain, like all mother's do, that problems can be overcome; that we can become better and stronger from our challenges. There will be no doubt in this child's mind that her mother knows whereof she speaks.

A review of the testimony in the record from MDH, both on direct examination and cross-examination, discloses she could hold her own and possessed parenting skills. She testified she had worked for a computer company, but she lost her job when the company went out of business. Then she began to care for two little boys, ages three and six, whose parents were going through a divorce. She stated she went through a lot with them, listening to their problems and dealing with them as a caretaker. She did that part-time at first, caring for them between the time the mother went to work and the father came home. She was the caretaker on a full-time basis when the mother went to work full time after the divorce. She did that for about three and one-half years, until the mother remarried. In other testimony on the record, MDH exhibited the ability to reason, was contemplative, responsive, and logical. On cross-examination, she admitted she was nervous, but counsel for GWJ could not ma-

nipulate her. The record justifies the conclusion that the trial court reasonably could conclude as it did that GWJ's objection to the fitness of MDH as a parent was not valid. Since no valid objections existed for the district court to weigh in reaching its decision as to the adoption, factor three weighed in favor of MWH and MDH.

A separate objection to the analysis by the district court of the evidence in light of WYO. STAT. § 1–22–108(c) invokes the fourth factor. GWJ argues the district court erred because it determined the "best interests" of the child would be served by the adoption. The essence of this argument is that the district court considered only "the best interests" of the child in its determination and ignored the other factors. In making this argument, GWJ cites *BBC; John and Jane Doe v. Otakar Kirchner [O'Connell v. Kirchner]*, — U.S. —, 115 S.Ct. 1084, 130 L.Ed.2d 1054 (1995),[2] citing *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); and *John Doe and Jane Doe [Petition of Doe]*, 159 Ill.2d 347, 202 Ill.Dec. 535, 638 N.E.2d 181 (1994).

■ Each of the cases invoked by GWJ is distinguishable. In *BBC*, we held that the first three factors—paternity, evidence of "interest in and responsibility for" the child, and the validity of the biological father's objections—weighed in favor of the biological father. Our holding was that the "best interests of the child" factor was outweighed by the other three factors. On the contrary, three factors—evidence of "interest in and responsibility for" the child, validity of the biological father's objections, and "best interests of the child"—all weigh in favor of MWH and MDH in this case. No abuse of discretion can be found in the trial court's conclusion that these three factors suffice to outweigh the biological father's claim to paternity of the child.

*Petition of Doe*, relied upon by GWJ, comes from the Supreme Court of Illinois. *Doe v. Kirchner (O'Connell v. Kirchner)* is

**2.** The case cited, properly styled *O'Connell v. Kirchner*, — U.S. —, 115 S.Ct. 1084, 130 L.Ed.2d 1054 (1995), has utterly no precedential value because it is a dissenting opinion by Justice

O'Connor to the denial of an application for stay entered without any majority opinion. Reliance upon such a citation is really worse than citing no authority at all.

a dissenting opinion by Justice O'Connor to a denial of an application for stay. GWJ quotes from both to support his assertion that the child's "best interest" cannot justify termination of parental rights when the parent has not been found unfit. We are not persuaded by this argument since both quotations are found in a concurring or dissenting opinion, and as such, afford no precedential value. The facts are also vastly different. In *Petition of Doe*, the Supreme Court of Illinois held there was insufficient evidence that the father had not shown a reasonable degree of interest in the child within the first thirty days of the child's birth because he was told the child had died subsequent to birth. His attempts to locate the child were blocked by the mother, and the adoptive parents failed to make an appropriate effort to ascertain the name or address of the biological father even though the mother knew his identity. The court properly held that, in such an instance, the father's parental interest was improperly terminated, and there was no occasion to rely upon the best interest of the child.

In the case before us, the district court also addressed the best interests of BGH in its decision letter:

> [MH] testified she believed it would be better for her child to be with [MWH and MDH] than to be with either the father or her. However, she also testified that she believed that she would be a better parent than [GWJ].
>
> A best interest of the child contest between [MH] and [GWJ] is easily won by [MH]. A best interest of the child contest between [GWJ] and [MWH and MDH] is easily won by the adoptive parents [MWH and MDH].
>
> The Court finds and concludes that it is in the best interests of the child to be adopted by [MWH and MDH].

3. The Fourteen Amendment provides, in pertinent part:

[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

GWJ does not invoke the Wyoming Constitution. The following provisions are relevant:

In its conclusion, the trial court not only ruled that the factors to be balanced weighed heavily in favor of the adoptive parents, as quoted above, but it also stated:

> [GWJ] has castigated [MH] for surrendering her child for adoption; but it has been [GWJ], not [MH], who has wavered with respect to the child. For her abortion was never an option; and she has always wanted her child but has recognized her own inability to provide all that she believes her child deserves. She is willing to endure the pain in order that her child should not suffer. If the decision of the Court is reversed, [MH] will be awarded custody.

We hold the district court afforded appropriate strict construction to WYO.STAT. § 1-22-108. The trial court did not premise its decision entirely on the "best interests of the child" test, and it appropriately balanced the four factors as it was required to do. We can find no abuse of discretion and must recognize the district court reasonably could conclude as it did.

■ The final issue brought before us by GWJ is the contention that there occurred a violation of his and BGH's rights to equal protection under the Fourteenth Amendment to the Constitution of the United States [3] when it terminated parental rights and granted the adoption. GWJ states:

> These decisions have their origin based on sex discrimination, inferring that a young man cannot take care of his child, while a young woman who does not want her child, can and is fit because she is a woman. * * * If he was a woman, the Court would very likely give the child to him. (See *Stanley vs. Illinois*, 405 U.S. 645 [92 S.Ct. 1208, 31 L.Ed.2d 551].)

GWJ, of course, has no authority to assert BGH's right to equal protection. His standing does not permit him to assert the rights of another. BGH's guardian *ad litem* repre-

WYO. CONST. art. 1, § 2 states:

In their inherent right to life, liberty and the pursuit of happiness, all members of the human race are equal.

WYO. CONST. art. 1 § 34 provides:

All laws of a general nature shall have a uniform operation.

sents her interest, and the guardian *ad litem* stated:

> As the child's guardian ad litem, the undersigned asserts that her right to equal protection under the laws has not been violated in any way, but has, on the contrary, been zealously protected by the District Court in these proceedings.

■ As to his own right, GWJ's argument is at best obscure. We understand the gist to be that, because the court did not rule in his favor, he was denied his right to equal protection.[4] GWJ does not attack the Wyoming adoption statute or Wyo.Stat. § 1–22–108 as being facially unconstitutional or encompassing a discriminatory motive. We are not able to discern any discrimination. Recently, we summarized the constitutional requirement for equal protection:

> Equal protection "mandates that all persons similarly situated shall be treated alike, both in the privileges conferred and in the liabilities imposed." *Small v. State,* 689 P.2d 420, 425 (Wyo.1984) (quoting *State v. Freitas,* 61 Haw. 262, 602 P.2d 914, 922 (1979)). In this regard, we have held the Wyoming Constitution offers more robust protection against legal discrimination than the federal constitution. *Wilson v. State ex rel. Office of Hearing Examiner,* 841 P.2d 90 (Wyo.1992); *Johnson v. State Hearing Examiner's Office,* 838 P.2d 158 (Wyo.1992); *Washakie County Sch. Dist. No. 1 v. Herschler,* 606 P.2d 310 (Wyo. 1980), *cert. denied,* 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980); *Nehring v. Russell,* 582 P.2d 67 (Wyo.1978).

*Allhusen v. State, By and Through Wyoming Mental Health Professions Licensing Bd.,* 898 P.2d 878, 884 (Wyo.1995).

The adoption statute, Wyo.Stat. § 1–22–108, does not favor one class over another, and it does not endorse mothers over fathers or women over men or adoptive parents over birth parents. There can be no valid argument that the statute is facially unconstitutional or encompasses a discriminatory motive.

■ It appears GWJ's objection is that the district court discriminated against him in its application of the adoption statute because the court was biased and prejudiced against him due to his gender. GWJ fails to make any logical argument in support of this claim of error.[5] GWJ quotes two cases, but they do not support his argument. One emphasizes the importance of family association. The other holds the Illinois dependency law was unconstitutional, depriving an unwed father of due process and equal protection, because of its failure to afford him a hearing on his fitness before his children could be taken away from him. We have no occasion to disagree, but in this context, these cases are not appropriate authority.

GWJ failed to point to any portion of the record evidencing a denial of his right to equal protection. We have reviewed that record carefully, and we cannot identify any such evidence. There is no justification for the conclusion that GWJ was denied the custody of BGH based on his gender. The district court appropriately identified characteristics important in raising a child. In its decision letter, the court stated MH is "the most sensible and mature of the two biological parents, but in addition she is the most credible." In considering the factor of the best interest of the child, the district court

---

**4.** We partially base this statement on the following language found in GWJ's brief:

> This Appellant loves his child even if she is stolen from him by so called lawful means. He will visit the child at play wherever she is. He will visit the child on her way to school, and he will visit the child at places and times this attorney can not think of, for it is his God given right and duty as a responsible father to do so.

Not only does this confirm our belief that GWJ's equal protection argument is based strictly on the fact he did not receive custody of his child, but GWJ's threats are not to be taken lightly.

We caution GWJ that Wyo.Stat. § 6–2–506 (1996) prohibits the conduct he proposes in his brief.

**5.** We prefer to decide issues on their merits and remind the Appellant:

> We will not consider issues which are not supported by proper citation of authority and cogent argument or which are not clearly defined. *Young v. Hawks,* Wyo., 624 P.2d 235 (1981); *Elder v. Jones,* Wyo., 608 P.2d 654 (1980); and Rule 5.01(2), W.R.A.P. [Replaced by Wyo.R.App.P. 7.01(f).]

*Knadler v. Adams,* 661 P.2d 1052, 1054 (Wyo. 1983).

ruled both MH and the adoptive parents, MWH and MDH, "easily won" over GWJ. The court was sufficiently concerned that it also stated: "If the decision of the Court is reversed, [MH] will be awarded custody." Our examination of the record does not permit us to conclude the district court was biased or prejudiced against GWJ on gender grounds in this case. His right to equal protection of the law was not violated, and his argument must fail.

We reaffirm our rule that the adoption statutes, WYO.STAT. §§ 1–22–101 to –116 are applicable in a contested adoption case without regard to the Wyoming paternity statute. The district court committed no abuse of discretion when it ruled three of the four factors articulated in WYO.STAT. § 1–22–108(c)—evidence of "interest in and responsibility for" the child, validity of the putative father's objections, and the best interests of the child—weigh against GWJ and in favor of MWH and MDH. There is nothing to justify the claim of a violation of the constitutional right to equal protection. The Final Decree of Adoption is affirmed.