2002 WY 8

Josephine Lovato HUTCHINS,
Appellant (Defendant),

v.

PAYLESS AUTO SALES, INC.,
a Wyoming corporation,
Appellee (Plaintiff).

No. 00–12.

Supreme Court of Wyoming.

Jan. 25, 2002.*

* This case was originally assigned to Justice Thomas on August 31, 2000, for the rendering of a proffered majority opinion. This case was reassigned to Chief Justice Lehman on February 5, 2001.

Georg Jensen of Law Offices of Georg Jensen, Cheyenne, WY, Representing Appellant.

John C. Patton of Patton & Davison, Cheyenne, WY, Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, and KITE, JJ.

LEHMAN, Chief Justice.

[¶ 1] Appellant Josephine Lovato Hutchins (Hutchins) appeals the district court's grant of summary judgment for the plaintiff Payless Auto Sales (Payless). Payless sought foreclosure and forced sale of the joint tenancy interest in Hutchins' home held by its judgment debtor, her daughter Sandra Hutchins McDonald (McDonald). Hutchins cross-claimed seeking reformation of the quitclaim deed granting joint tenancy to McDonald on the grounds of mutual mistake. The district court denied her motion for summary judgment. Although we do not approve the reasoning of the district court, we affirm its grant of summary judgment for Payless.

## ISSUES

[¶ 2] Appellant presents this statement of the issues:

1. Did the court err in finding for the plaintiff and against the defendant on motions for summary judgment where the defendants presented uncontroverted evidence regarding the parties' intent and the existence of mutual mistake?

2. Did the court err in granting summary judgment for the plaintiff based solely on reference to documents in the public record and without any evidence to dispute the sworn allegations of the defendants regarding their complaint for reformation?

3. Should the court pick and choose between conflicting affidavits in rendering a decision on a motion for summary judgment?

4. In order to prevail on a defense of Laches or Waiver is it necessary to plead the same as an affirmative defense?

Appellee restates the issue thusly:

Whether the District Court's ruling that there is no genuine issue of material fact and that the Appellee was entitled to summary judgment as a matter of law for foreclosure was proper under Wyoming law.

## FACTS

[¶ 3] On July 13, 1993, Hutchins executed a quitclaim deed conveying the subject real property to herself and her daughter McDonald as joint tenants with right of survivorship. The next day this deed was properly recorded in the public records of Laramie County where the property is located. Two years later, on October 14, 1995, Payless Auto Sales made a loan to McDonald and her

husband evidenced by a promissory note in the principal amount of $8,639.83. At the time the note was executed McDonald and her husband and three children were residing in the home. On November 26, 1996, Payless was granted a default judgment against McDonald and her husband in the amount of $8,579.83 principal, $1,422.37 interest, and $3,145.00 in costs and fees for a total of $13,147.20. A second quitclaim deed was filed in Laramie County on August 26, 1997, conveying the property from Hutchins and McDonald as joint tenants to Hutchins and her son Timothy M. Hernandez as joint tenants with a right of survivorship.

[¶ 4]   On October 28, 1997, McDonald and her husband filed their "Third Amended Chapter 13 Plan" in the United States Bankruptcy Court for the District of Wyoming. This plan listed Payless Auto Sales as a 3(a) claimant with a "claim secured by property of another paid in full through the plan." The home was listed as collateral under this subsection of the plan with a fair market value of $35,000,[1] and the claim listed as $13,147.20. Subsequently, the McDonalds made payments under the terms of the bankruptcy plan which were applied to the Payless judgment. However, on September 9, 1998, the Bankruptcy court dismissed the McDonalds' case for failure to comply with plan payments. As a consequence, on May 24, 1999, Payless filed a complaint for foreclosure on the real property at issue to recover the $9,320.93 still owed on its judgment. Hutchins answered the complaint and crossclaimed seeking reformation of the quitclaim deed on the basis of mutual mistake. She contended the quitclaim deeds were an estate-planning device intended as a substitute for probate and did not accurately reflect the intent of the parties. Hutchins further alleged that neither McDonald nor Hernandez

had paid any consideration for the conveyance. In support of her motion for summary judgment, Hutchins, McDonald, and Hernandez submitted affidavits which stated that the parties' intent at all times was to preserve a life estate for Hutchins in the property and to name McDonald, and later Hernandez, as trustees to the property to be held in trust for McDonald's three minor children. They asked that the district court recognize their mutual mistake and equitably reform the deeds to reflect the parties' true intent.

[¶ 5]   The district court granted summary judgment for the plaintiff Payless on its claim of foreclosure on November 5, 1999. This timely appeal followed. In March of 2000, while this appeal was pending, McDonald's undivided one-half interest in the home was sold at a foreclosure sale.[2]

### STANDARD OF REVIEW

[¶ 6]   This case comes to us on a grant of summary judgment for Payless, coupled with a denial of Hutchins' motion for summary judgment. This court has recognized the general rule that a denial of a motion for summary judgment is an interlocutory order and as such is not subject to appeal. *Matter of Adoption of MSVW*, 965 P.2d 1158, 1161 (Wyo.1998); *State Farm Mut. Auto. Ins. Co. v. Shrader*, 882 P.2d 813, 820 (Wyo.1994). However, we have adopted the exception that, "when the district court grants one party's motion for a summary judgment and denies the opposing party's motion for a summary judgment and the district court's decision completely resolves the case, both the grant and the denial of the motions for a summary judgment are subject to appeal." *Lieberman v. Wyoming.com LLC*, 11 P.3d 353, 356 (Wyo.2000); *McLean v. Hyland Enterprises, Inc.*, 2001 WY 111, ¶ 17, 34 P.3d 1262, ¶ 17 (Wyo.2001). There-

---

1.   It is unclear whether this figure represents total fair market value of the property in question or only McDonald's interest in the property.

2.   In response to Payless' subsequent motion to dismiss this appeal as moot, this court determined that because Payless was itself the purchaser of McDonald's interest, appellant and appellee remain the sole interested parties in this appeal. Further, because Payless made its purchase with actual notice of any possible defect in

title, no "bona fide purchaser" is present to potentially defeat the remedy requested by the appellant, reformation of the deed. *Crompton v. Bruce*, 669 P.2d 930 (Wyo.1983). Therefore, this court's determination of the issue would continue to have a "practical effect on the existing controversy" and "any judgment rendered can be carried into effect" even after the foreclosure sale of the property interest. Thus, the appeal cannot properly be dismissed as moot.

fore, we will review Hutchins' argument regarding the denial of her summary judgment motion for reformation of the quitclaim deed.

[¶ 7] Summary judgment is appropriate if the record, viewed in the light most favorable to the non-moving party, reveals that no genuine issues of material fact exist and the prevailing party is entitled to judgment as a matter of law. *Worley v. Wyoming Bottling Co., Inc.*, 1 P.3d 615, 620 (Wyo.2000); *Terry v. Pioneer Press, Inc.*, 947 P.2d 273, 275 (Wyo.1997); *Davis v. Wyoming Medical Center, Inc.*, 934 P.2d 1246, 1250 (Wyo.1997); W.R.C.P. 56(c). A fact is material if it establishes or refutes an essential element of a claim or defense. *Tidwell v. HOM, Inc.*, 896 P.2d 1322, 1324 (Wyo.1995). In evaluating summary judgment, we apply the same standards as the trial court, without affording any deference to the trial court's decisions on issues of law. *Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211, 216 (Wyo.1994).

### DISCUSSION

[¶ 8] The district court in its order granting summary judgment for Payless found that Payless had made a prima facie showing that the property was subject to its judgment lien; that Defendant McDonald's undivided one half interest became subject to the lien; that subsequent events had not discharged the lien; and that it should be foreclosed in satisfaction of the judgment. The district court then, relying on *Claassen v. Nord*, 756 P.2d 189, 194 (Wyo.1988), determined that once a prima facie case had been made the burden shifted to the party opposing the motion to present specific facts showing that a genuine issue of material fact was present. It was at this point the court decided that

> [t]he only evidence offered by the Defendants are their self-serving affidavits that this was all a mistake and they were really intending to set up a trust for the children of Defendant, McDonald. This in the face of clear record evidence and actions of Defendant, McDonald, in her bankruptcy

to the contrary, and no evidence that there was, is, or is going to be a trust. To entertain the self-serving posturing of the Defendants would destroy any ability to rely on the public record. The deeds are clear and unambiguous. At least one was notarized by, if not drafted by, an attorney and are plain on their face in the public record. The Court finds the affidavits ingenuous [sic],[3] and the Court finds that the Court is not required to entertain the self-serving affidavits of the Defendants with not a single fact supporting their contentions, which are just that, contentions not statements of facts that can in any way be supported by the record or their conduct. *Claassen v. Nord*, 756 P.2d 189 (Wyo.1988) at page 194.

[¶ 9] It is difficult to ascertain by the foregoing language precisely what action was taken by the district court in regard to the defendants' affidavits.[4] However, if the court determined that it was free to strike the affidavits in question from consideration on the basis that they are "self-serving" or conclusory in the context of mutual mistake in the drafting of a quitclaim deed, then we think this reasoning by the district court is erroneous as an overbroad application of the holding of *Claassen v. Nord*. In *Claassen* this court simply reaffirmed its general holdings that self-serving affidavits not based in fact may be insufficient to create a genuine issue of material fact in a particular context. 756 P.2d at 194. In that case we held the affidavits in question did not sufficiently support a claim of negligence because they failed to include any facts that went directly to the knowledge of the defendants necessary to show breach of the duty of care.

[¶ 10] The analysis of whether a party's affidavit sets forth specific facts adequate to survive a motion for summary judgment, though interrelated, is discrete from the analysis required to determine whether an affidavit may be properly stricken from

---

3. We presume the court meant to find the affidavits *dis*ingenuous or "lacking in candor."

4. This order perhaps exemplifies the shortcomings that often accompany the common practice

of allowing the prevailing party, subject to its opponent's objection, to draft the order of the court.

the court's consideration in deciding a case on summary judgment. To quote the old cliché, it's like comparing apples to oranges. In the latter analysis, first some motion to strike the affidavits or objection to the affidavits under Rule 56(e) must be made. In *Conway v. Guernsey Cable TV*, this court rejected the appellants' contention that the affidavit of the appellees' expert witness should be stricken, stating:

It is well established that a party must move to strike an affidavit which violates Rule 56(e); if he fails to do so, he will waive his objection, and, in the absence of a gross miscarriage of justice, the court may consider the defective affidavit. 10A [10B Charles Alan] Wright, [Arthur R.] Miller & [Mary Kay] Kane, *Federal Practice and Procedure: Civil 2d [3d]* § 2738 (1983) [1998]. The record in the present case is devoid of any objection or motion to strike the affidavit on the ground that it violated Rule 56(e).

713 P.2d 786, 788–89 (Wyo.1986).

[¶ 11] Likewise, in the present case, no motion to strike the parties' affidavits appears in the record. Furthermore, the affidavits of the defendants are not "defective" as the term is properly employed in a Rule 56(e) analysis. An affidavit should not be stricken if it is "made on personal knowledge," "set[s] forth such facts as would be admissible in evidence," "show[s] affirmatively that the affiant is competent to testify to the matters stated therein," and has attached to it the papers and documents to which the affidavit refers. Rule 56(e); *Greenwood v. Wierdsma*, 741 P.2d 1079, 1084–85 (Wyo. 1987).

[¶ 12] The affidavits of Hutchins, McDonald, and Hernandez are each made upon the party's own personal knowledge and show that the affiants are competent to testify to the matters stated therein. Regrettably, it is application of the mandate of Rule 56(e) that the affidavit "set forth such facts as would be admissible in evidence" that presumably gives rise to the improper apple/orange mingling of the two analyses.

[¶ 13] This court has long held that affidavits based on opinion, belief, conclusions of law, or hearsay statements do not

comply with subdivision (e) of W.R.C.P. 56, *Cook Ford Sales, Inc. v. Benson,* 392 P.2d 307, 309 (Wyo.1964); *Keller v. Anderson,* 554 P.2d 1253, 1258 (Wyo.1976); *Cordova v. Gosar,* 719 P.2d 625 (Wyo.1986), as, ultimately, the material presented to the court by way of affidavit in summary judgment proceedings should be such as would be admissible in evidence at the time of trial. *Newton v. Misner,* 423 P.2d 648, 650 (Wyo.1967). Thus, "courts cannot properly consider those ***portions. of an affidavit*** which are categorical assertions and conclusions" of an ultimate fact. *Greenwood,* 741 P.2d at 1086 (citing *Natrona County v. Casper Air Service,* 536 P.2d 142 (Wyo.1975) and *Wells v. Jeep Corp.,* 532 P.2d 595 (Wyo.1975)) (emphasis added).

[¶ 14] The affidavit of appellant Hutchins states:

Come Now the Defendant, Josephine Lovato Hutchins, in the above entitled proceeding, being first duly sworn upon their oath and do depose and say as follows:

1. That I am an adult person and competent to make this affidavit. I have personal knowledge of the matters set forth herein.

2. That prior to July 13, 1993 I was the sole owner of the property located at [address of real property] in Cheyenne, Wyoming, more particularly known as [legal description of real property].

3. That in July of 1993 I became concerned for the future of my grandchildren, the children of my daughter, Sandra J. Hutchins, and determined that I wished to provide for them to always have a home. It was at that time I signed a deed, transferring the property above described to myself and my daughter, Sandra J. Hutchins. It was my intent to retain ownership of the property during my lifetime and that on my death that my daughter would hold the property as a trustee for my grandchildren, [TS, JH, and IM].

[4]. That in August of 1997 I became concerned about my daughter, Sandra, holding the property as trustee for my grandchildren. She was having problems with her husband and he had

caused significant damage to the property. I was concerned enough that I asked my daughter to transfer the property to her brother, Timothy M. Hernandez, who is the God-father of my grandchildren, [TS, JH, and IM].

[5]. That on August 25, 1997 my daughter and I signed a new deed transferring the property to myself and my son, Timothy M. Hernandez. It was my intent to continue to retain ownership of the property until my death and that upon my death that my son, Timothy would hold the property for my grandchildren as a trustee. It was due to a lack of understanding that these provisions were not included in deeds.

[6]. That at no time has my daughter, Sandra J. Hutchins, now McDonald, nor my son, Timothy M. Hernandez, paid any money or given me anything of value for the transfers that I described above.

[7]. That at all times I do believe they understood my intent and would have honored my wishes to have this property held for the benefit of my grandchildren upon my death.

[8]. Further Affiant Sayeth Naught.[5]

[¶ 15] The foregoing affidavit clearly and unmistakably contains relevant, competent, and admissible evidence that Hutchins would properly have been allowed to testify to at a trial on the merits for reformation of the quitclaim deeds.

[¶ 16] Payless further contends that the "deed speaks for itself, it is clear and unambiguous and therefore Appellant's parol assertions as to the intent and import of the document are irrelevant and immaterial." We disagree. This court has long held that the parol evidence rule is not applicable in a suit for reformation on the basis of mutual mistake. We stated in the seminal case of *Russell v. Curran:*

It is practically a universal rule that in suits to reform written instruments on the ground of fraud or mutual mistake, parol evidence is admissible to establish the fact of fraud or of a mistake and in what it

consisted, and to show how the writing should be corrected in order to conform to the agreement or intention which the parties actually made or had, and this, even though the instrument in question is within the statute of frauds. So far as the introduction of such proof may be said to violate the statute, it is immaterial whether it comes from the complainant or the respondent. The nature of the action is such that it is outside the field of operation of the parol-evidence rule. If this were not so, a rule adopted by the courts as a protection against fraud and false swearing would, as has been said in regard to the analogous rule known as the statute of frauds, become the instrument of the very fraud it was intended to prevent. *Evidence of fraud or mistake is seldom found in the instrument itself, and unless parol evidence may be admitted for the purpose of procuring its reformation, the aggrieved party would have as little hope of redress in a court of equity as in a court of law.*

*Generally, it may be said that any testimony which tends to prove the mistake alleged or the intention of the parties is admissible. A witness in a position to know may testify concerning the intention of the parties to an agreement, to the same effect as to any other fact.*

*Russell v. Curran,* 66 Wyo. 173, 187–88, 206 P.2d 1159, 1163 (Wyo.1949) (emphasis added).

[¶ 17] Consequently, we conclude that the affidavits of the defendants were properly before the court and must be considered in making a determination whether the grant of summary judgment to Payless complied with the requirements of W.R.C.P. 56. Accordingly, if, in finding that "the Court is not required to entertain the self-serving affidavits of the Defendants with not a single fact supporting their contentions, which are just that, contentions not statements of facts that can in any way be supported by the record or their conduct" the district court determined that it could *sua sponte* strike the affidavits of the defendants, Hutchins, McDonald, and

---

5. The affidavits of McDonald and Hernandez are substantially similar to the affidavit of Hutchins.

Hernandez, under W.R.C.P. 56(e), then it committed error as a matter of law.

[¶ 18] Nevertheless, even after giving the proper weight to the appellant's affidavits, we hold that Payless' motion for summary judgment was properly granted by the district court. When evaluated, as required, with reference to the applicable law governing the equitable remedy of reformation, it is clear that appellant has not established a genuine issue of material fact sufficient to preclude a grant of summary judgment against her.[6]

[¶ 19] Reformation is an equitable remedy which emanates from the maxim that "equity treats that as done which ought to have been done." 66 Am.Jur.2d *Reformation of Instruments* § 2 at 528 (1973). At its most fundamental level, the remedy acknowledges the fact that for one reason or another written instruments do not always accurately memorialize the antecedent agreement of the parties. *See* 3 Arthur L. Corbin, *Corbin on Contracts* § 540 (1960). Accordingly, a court acting in equity may reform a written instrument upon clear and convincing evidence of the following elements: (1) a meeting of the minds—a mutual understanding between the parties—prior to the time a writing is entered into, (2) a written contract, or agreement, or deed (3) which does not conform to the understanding, by reason of mutual mistake. *Toland v. Key Bank of Wyoming*, 847 P.2d 549, 554 (Wyo.1993); *Gasaway v. Reiter*, 736 P.2d 749, 751 (Wyo.1987); *Crompton v. Bruce*, 669 P.2d 930, 934 (Wyo.1983). Clear and convincing evidence is defined as "that kind of proof which would persuade a trier of fact that the truth of the contention is highly probable." *MacGuire v. Harriscope Broadcasting Co.*, 612 P.2d 830, 839 (Wyo. 1980). *See also Story v. State Bd. of Medical Examiners*, 721 P.2d 1013, 1014 (Wyo.1986); *Matter of GP*, 679 P.2d 976, 982 (Wyo.1984).

[¶ 20] This court has adopted the reasoning of the United States Supreme Court in *Anderson v. Liberty Lobby, Inc.*, that "the inquiry involved in ·a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Oil, Chemical & Atomic Workers Int'l Union v. Sinclair Oil Corp.*, 748 P.2d 283, 288–89 (Wyo.1987) (quoting *Anderson*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)).

[¶ 21] Consequently, in light of the significant burden that appellant bears to show entitlement to the equitable remedy of reformation given the posture of this case and the other evidence indicating more knowledgeable drafting of the second deed, we cannot say that the affidavits of Hutchins, McDonald, and Hernandez standing alone are sufficient to raise a genuine issue of material fact on the issue of mutual mistake sufficient to preclude summary judgment for Payless. Accordingly, we affirm the judgment of the district court.

---

6. It is of some concern that the court issued its order without reference to the applicable substantive law of the underlying claim. This court has established a six-step framework to guide the analysis and resolution of claims under W.R.C.P. 56. Unquestionably, district courts should utilize it in making their summary judgment determinations. *See Cordova v. Gosar*, 719 P.2d 625 (Wyo.1986); *Davenport v. Epperly*, 744 P.2d 1110 (Wyo.1987); *Smith v. Ensley*, 752 P.2d 1374 (Wyo.1988); *Matter of E.B.*, 795 P.2d 1212 (Wyo. 1990).