2006 WY 49

**In the Matter of the ADOPTION OF ADA and SSA,**

**CJ, Appellant (Petitioner),**

v.

**SA, Appellee (Respondent).**

**No. C–05–12.**

Supreme Court of Wyoming.

April 20, 2006.

---

Representing Appellant: Ronald G. Pretty, Cheyenne, Wyoming.

Representing Appellee: No appearance.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

KITE, Justice.

[¶ 1] CJ is the stepfather of ADA and SSA (the children), and SA is their biological father. Stepfather petitioned the district court to adopt the children without father's consent because father had failed to provide adequate child support for the children. The district court denied the petition, finding stepfather failed to prove by clear and convincing evidence that father willfully failed to pay child support. We affirm.

## ISSUES

[¶ 2] Stepfather articulates the following appellate issues:

1. Did the court err when it did not terminate the Respondent[']s parental rights[?]
2. Did the court err when it did not take judicial notice of the previous court[']s findings[?]

Father did not appear on appeal.

## FACTS

[¶ 3] The children's mother and father were divorced in 2001, and the divorce decree awarded custody of the children to mother and ordered father to pay $527.46 per month in child support. Mother married stepfather in January 2003, and stepfather assumed responsibility for supporting the children. Father did not comply with his child support obligation; consequently, on February 2, 2004, stepfather filed a petition to adopt the children without father's consent pursuant to Wyo. Stat. Ann. § 1-22-110 (LexisNexis 2005).

[¶ 4] The district court held a hearing on stepfather's petition. Father admitted he had not paid child support in accordance with the order but argued his failure was not willful. The district court ordered the parties to brief the issue of whether father's failure to pay support was willful. After reviewing the submissions, the district court concluded father's failure to pay child support was not willful and, consequently, denied stepfather's petition. Stepfather appealed.

## STANDARD OF REVIEW

[¶ 5] We review the district court's decision on a petition to adopt by applying the abuse of discretion standard. *In re Adoption of TLC, TOC v. TND,* 2002 WY 76, ¶ 9, 46 P.3d 863, 867–68 (Wyo.2002).

"The power to grant or deny a petition for adoption is within the discretion of the trial court. *Matter of Adoption of BGH,* 930 P.2d 371, 377 (Wyo.1996); *Matter of Adoption of GSD,* 716 P.2d 984, 988 (Wyo. 1986). 'Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria.' *Mintle v. Mintle,* 764 P.2d 255, 257 (Wyo.1988) (quoting *Martin v. State,* 720 P.2d 894, 897 (Wyo.1986)). 'In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably have concluded as it did.' *Matter of Adoption of BGH,* 930 P.2d at 377–78 (quoting *Matter of Adoption of CCT,* 640 P.2d 73, 76 (Wyo.1982)). In the context of alleged abuse of discretion, the assessment of the circumstances in the case

is tantamount to an evaluation of whether the evidence is sufficient to support the decision of the district court. In review of the evidence, we accept the successful party's submissions, granting them every favorable inference fairly to be drawn and leaving out of consideration conflicting evidence presented by the unsuccessful party."

*Id.* (quoting *Basolo v. Basolo,* 907 P.2d 348, 353 (Wyo.1995)).

## DISCUSSION

[¶ 6] Stepfather claims the district court abused its discretion by denying his petition to adopt the children without father's consent. A petition for adoption without parental consent may be granted by the district court if the elements outlined in Wyo. Stat. Ann. § 1–22–110 are satisfied. *In re Adoption of CF, TF v. State of Wyoming, Dep't of Family Services*, 2005 WY 118, ¶ 10, 120 P.3d 992 (Wyo.2005); *In re Adoption of SMR, MVC v. MB*, 982 P.2d 1246, 1248 (Wyo.1999). Wyo. Stat. Ann. § 1–22–110 states, in pertinent part:

(a) In addition to the exceptions contained in W.S. 1–22–108, the adoption of a child may be ordered without the written consent of a parent or the putative father if the court finds * * * that the putative father or the nonconsenting parent or parents have:

* * *

(iv) Willfully failed to contribute to the support of the child for a period of one (1) year immediately prior to the filing of the petition to adopt and has failed to bring the support obligation current within sixty (60) days after service of the petition to adopt; or

* * *

(ix) Willfully failed to pay a total dollar amount of at least seventy percent (70%) of the court ordered support for a period of two (2) years or more and has failed to bring the support obligation one hundred percent (100%) current within sixty (60) days after service of the petition to adopt.

[¶ 7] An adoption results in the termination of the familial rights of the biological parent. *SMR*, 982 P.2d at 1249; *In re Adoption of CJH, SLH v. CST*, 778 P.2d 124, 126 (Wyo.1989). Because the right to associate with one's children is a fundamental right protected by the Wyoming and United States Constitutions, "adoption statutes are strictly construed when the proceeding is against a non-consenting parent, and every reasonable intendment is made in favor of that parent's claims." *TLC*, 2002 WY 76, ¶ 10, 46 P.3d at 868. *See also, RS v. Dep't of Family Services, (In re KLS)*, 2004 WY 87, ¶ 11, 94 P.3d 1025, 1027–28 (Wyo.2004); *Lassiter v. Dep't of Social Services of Durham County, North Carolina*, 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). "Moreover, the party requesting adoption bears the burden of proving the existence of at least one of the statutory factors by clear and convincing evidence." *TLC*, 2002 WY 76, ¶ 11, 46 P.3d at 868. Clear and convincing evidence is defined as "that kind of proof which would persuade a trier of fact that the truth of the contention is highly probable." *Hutchins v. Payless Auto Sales, Inc.*, 2002 WY 8, ¶ 19, 38 P.3d 1057, 1063 (Wyo.2002), quoting *MacGuire v. Harriscope Broadcasting Co.*, 612 P.2d 830, 839 (Wyo.1980).

[¶ 8] The petition stated the adoption should be allowed without father's permission pursuant to subsection (ix) because father had willfully failed to pay a total dollar amount of at least seventy percent of the court ordered support for a period of two years or more. However, the district court's order denying the petition focused on Wyo. Stat. Ann. § 1–22–110(a)(iv), which allows adoption without the parent's consent if the parent has "willfully failed to contribute to the support of the child for a period of one (1) year immediately prior to the filing of the petition to adopt and has failed to bring the support obligation current within sixty (60) days after service of the petition to adopt." Thus, the particular subsection of Wyo. Stat. Ann. § 1–22–110 at issue in this case is unclear. However, father admitted he had not paid his child support and the district court's dispositive finding did not involve a mathematical calculation, but rather was based upon the finding that father's failure to pay was not willful. The willfulness requirement must be satisfied in order to grant an adoption under either subsection (ix) or (iv). *See TLC*, 2002 WY 76, ¶¶ 27–29, 46 P.3d at 873. Our inquiry, therefore, focuses on the willfulness element and not on the amount of support father did or did not pay.

[¶ 9] We have explained the importance of the willfulness requirement as follows:

Clearly, by inclusion of the modifying term "willfully" the statute draws a distinction, as it must, between the parent who

though financially able to pay his court-ordered child support is unwilling to do so, and the parent who though willing to pay his court-ordered child support is financially unable to do so. "A natural parent's failure to support his or her child does not obviate the necessity of the parent's consent to the child's adoption, where the parent's financial condition is such that he or she is unable to support the child." 2 Am.Jur.2d *Adoption* § 88 (1974).

Moreover, this court has defined willfully in the context of Wyo. Stat. Ann. § 1–22–110 as "intentionally, knowingly, purposely, voluntarily, consciously, deliberately, and without justifiable excuse, as distinguished from carelessly, inadvertently, accidentally, negligently, heedlessly or thoughtlessly." *Matter of Adoption of CCT*, 640 P.2d 73, 76 (Wyo.1982).

*TLC*, 2002 WY 76, ¶¶ 27–28, 46 P.3d at 873 (some citations omitted).

 [¶ 10] Stepfather argues, under the principle of *res judicata*, father was precluded from claiming his failure to pay child support was not willful because he had previously been found in contempt of court and incarcerated for failing to comply with his support obligation. The record does not include the contempt orders;[1] however, we are able to confirm from the transcript of the hearing that father was, indeed, intermittently incarcerated on various charges, including his failure to pay child support.

[¶ 11] We have described the preclusion doctrines of *res judicata* and *collateral estoppel* as follows:

[R]es judicata bars the relitigation of previously litigated claims or causes of action[.] ... [F]our factors are examined to determine whether the doctrine of res judicata applies: (1) identity in parties; (2) identity in subject matter; (3) the issues

are the same and relate to the subject matter; and (4) the capacities of the persons are identical in reference to both the subject matter and the issues between them. Collateral estoppel bars relitigation of previously litigated issues and involves an analysis of four similar factors: (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.

*Markstein v. Countryside I, L.L.C.*, 2003 WY 122, ¶ 15, 77 P.3d 389, 394–95 (Wyo.2003).

 [¶ 12] The party asserting application of either *res judicata* or *collateral estoppel* must analyze the elements of the relevant doctrine by comparing the prior adjudication with the present action. Unfortunately, stepfather's argument for application of *res judicata* amounts to only a couple of sentences and does not include any legal analysis or citation to legal authority. Since the record does not contain the contempt orders (see n. 1), we cannot determine whether the parties or the issues in the contempt proceeding are identical to those in the adoption proceeding or whether the time frame of the contempt proceedings was such that father's conduct would be relevant to the willfulness analysis under the adoption statute. We, therefore, refuse to consider whether father is precluded by the earlier contempt orders from arguing his conduct was not willful. *See, e.g., Bitker v. First National Bank in Evanston*, 2004 WY 114, ¶ 15, 98 P.3d 853, 857 (Wyo.2004).

---

1. Stepfather claims the district court erred by refusing to take judicial notice of the contempt orders and other documents from the divorce case. Although stepfather attached those documents to his brief, they were not included as part of the record on appeal. As we explained in *Aragon v. Aragon*, 2005 WY 5, 104 P.3d 756 (Wyo.2005), we will not address an appellant's contention the district court erred by failing to take judicial notice of certain documents when

they are not included in the record on appeal. *Aragon*, 2005 WY 5, ¶¶ 19–20, 104 P.3d at 761–62. "An appellant bears the burden of bringing to the reviewing court a sufficient record on which to base its decision," *Aragon*, 2005 WY 5, ¶ 20, 104 P.3d at 761, and he cannot supplement the appellate record by attaching documents to his brief. *Barnes v. Barnes*, 998 P.2d 942, 945 (Wyo.2000). We, therefore, refuse to consider stepfather's judicial notice argument.

[¶ 13] We turn now to the evidence of father's willfulness. Father acknowledged he was aware of his child support obligation and did not pay it on a regular basis. He claimed he was unable to consistently pay child support because he had difficulty finding employment in Evanston and he had been incarcerated intermittently on a number of different charges.[2]

[¶ 14] Stepfather argues father's actions were willful because his behavior led to his incarceration which prevented him from earning the money to pay child support. We have directly addressed the issue of whether a non-consenting parent's failure to pay child support because he is incarcerated is sufficient to establish willfulness. *TLC*, 2002 WY 76, ¶ 34, 46 P.3d at 874–75. We said in *TLC*: "Incarceration, standing alone, does not provide the direct intent necessary to constitute willful failure to pay under the pertinent statute." *TLC*, 2002 WY 76, ¶ 34, 46 P.3d at 874–75. Instead, "the focus must remain on the parent's intent and ability to pay. The courts should look at whether the parent has demonstrated, through whatever financial means available to him, that the parent has not forgotten his statutory obligation to his child." *TLC*, 2002 WY 76, ¶ 36, 46 P.3d at 875. When a parent is incarcerated, " '[t]he proper inquiry to address . . . is whether the natural parent intentionally incapacitated himself for the purpose of avoiding the duty imposed by law; if so then imprisonment may constitute justification for dispensing with his consent in the adoption proceeding.' " *TLC*, 2002 WY 76, ¶ 35, 46 P.3d at 875, quoting *In Matter of Adoption of V.A.J.*, 660 P.2d 139, 141 (Okla. 1983). There is no evidence in this record which indicates father willfully committed any crimes in order to have himself incarcerated so he could avoid his child support obligation. Thus, his incarceration, by itself, does not justify a finding of willfulness.

[¶ 15] Of course, even when a parent is incarcerated, he must pay child support if he has the means to do so. "A parent must always pay child support according to his or her financial ability." *TLC*, 2002 WY 76, ¶ 36, 46 P.3d at 875. *See also, Glenn v. Glenn*, 848 P.2d 819, 821 (Wyo. 1993). The record indicates father was incarcerated off and on over a period of several years; however, neither the actual dates of his imprisonment nor the total amount of time he spent in jail is shown in the record. Furthermore, stepfather did not present any evidence as to whether father earned wages while incarcerated. Thus, we do not know if he had the ability to pay any child support while he was incarcerated. Compare, *TLC*, 2002 WY 76, ¶ 31, 46 P.3d at 874 (explaining the father in that case had made minimal child support payments while imprisoned).

[¶ 16] Father testified, when he was not in jail, he attempted to find work in order to earn the funds to pay child support, but was not able to find consistent work in Uinta County. He identified two construction companies for which he had worked as a truck driver and stated, without contradiction, his child support was paid while he was working. Father also testified he had attempted to find work through "the union" and with "the rigs," but was unsuccessful. After he was unable to secure other employment, he said he started his own business with the hopes of earning a living. At the time of the hearing, the business apparently had not yet yielded any earnings. Father testified he was living with friends because he could not afford his own residence.

[¶ 17] Stepfather argued the unemployment statistics in Uinta County did not support father's claim that no work was available. He also asserted father did not comply with the contempt orders which required him to take part in retraining programs to make him more employable. Father disputed step-

---

2. At the hearing father also claimed he had difficulty paying his child support because he suffered from posttraumatic stress disorder. This argument was not developed in the record, the district court did not comment on it in its ruling, and it was not sufficiently addressed on appeal. Thus, although there is a body of law addressing claims that a parent is unable to pay child support because of mental illness, *see, e.g.*, Annotation, *The Natural Parent's Indigence Resulting from Unemployment or Under Employment As Precluding Finding Failure to Support Child Waived Requirement of Consent to Adoption*, 83 A.L.R.3d 375, § 4 (2000), we decline to address the argument.

father's allegation work was available and claimed he had attempted to comply with the retraining requirement but his efforts had been thwarted when he was incarcerated.

[¶ 18] The determination of whether father's failure to pay child support was willful involves disputed factual issues; consequently, it was within the district court's province to weigh the evidence and judge the credibility of the witnesses. *See RS,* 2004 WY 87, ¶¶ 33–34, 94 P.3d at 1033–34. Although our review is made more difficult because the district court did not make any express findings, the record is sufficient to support the district court's ultimate conclusion that stepfather had not proven by clear and convincing evidence father's failure to pay was willful. *See, e.g., Byrd v. Mahaffey,* 2003 WY 137, ¶ 20, n. 2, 78 P.3d 671, 676, n. 2 (Wyo.2003) (noting "the enumeration of the specific findings of fact, reasoning, and conclusions of law made by a district court in support of its ruling is most welcome and sometimes even critical in this court's appellate review," but finding there was sufficient evidence in the record to support the district court's ultimate conclusion). Evidence exists in the record supporting father's contention he did not have the means to pay his child support because he had difficulty earning a living and had been incarcerated. *TLC,* 2002 WY 76, ¶ 28, 46 P.3d at 873.

[¶ 19] Stepfather also argues the record shows father chose to spend his money on drugs and/or alcohol instead of paying his child support obligation. The record does contain evidence suggesting father's use of intoxicating substances contributed to his difficulties. He testified he lost his driver's license as a result of driving while intoxicated and acknowledged he was facing a charge of possession of methamphetamine at the time of the adoption hearing. He stated, however, he had pled not guilty to the criminal charge claiming he did not use the drug. There are no documents in the record informing us of the outcome of the charge.

[¶ 20] Obviously, if a parent has money with which to buy drugs or alcohol and chooses to do so rather than pay child support, an argument could be made that the failure to pay child support was willful. *In re Adoption of Doe,* 277 Mont. 251, 921 P.2d 875, 880 (1996). However, it is important to focus on the proper query when evaluating such an argument. As explained by the Montana Supreme Court when reviewing a lower court's termination of mother's parental rights:

> [A parent's] admitted drug addiction alone cannot serve as clear and convincing evidence that she had the means to contribute to her children's support. The relevant inquiry is whether she obtained funds which could have been used for the support of the children which, instead, she chose to spend on drugs.

*Id.* at 880. In the case at bar, there was no evidence concerning the extent of father's drug or alcohol use or the actual amount of money he spent on such substances. More importantly, the record does not show father had funds available to him to buy drugs and/or alcohol instead of paying child support.

[¶ 21] As we have said before, the right of parents to associate with their children is fundamental, and due process requires we stringently guard this important right. Stepfather was charged with proving, by clear and convincing evidence, father willfully disregarded his child support obligation. The district court concluded he did not meet that onerous burden. Although father's efforts to pay his child support certainly cannot be characterized as model and may have, at times, been willful, stepfather must prove that fact with clear and convincing evidence, and this record does not contain such evidence. When there is a failure of proof, we cannot conclude the district court's denial of the petition for adoption was an abuse of discretion.

[¶ 22] Affirmed.