FOX, Justice.
[¶ 1] Father and Stepmother petitioned for a decree of adoption allowing Stepmother to adopt MMM without Mother's consent. The district court denied the petition, finding that Father and Stepmother failed to show by clear and convincing evidence that Mother willfully abandoned MMM or that she willfully failed to pay child support. Father and Stepmother appeal and we affirm.
ISSUES
[¶ 2] 1. Did the district court abuse its discretion when it found that Father and *492 Stepmother failed to demonstrate by clear and convincing evidence that Mother willfully abandoned MMM?
2. Did the district court abuse its discretion when it found that Father and Stepmother failed to demonstrate by clear and convincing evidence that Mother willfully failed to pay child support during the relevant period?
FACTS
[¶ 3] The facts in this case are generally undisputed. On November 5, 2008, MMM was born to Father and Mother, who were never married. Mother was a drug addict and was first arrested when MMM was two years old. She has spent a significant amount of time since then either in incarceration or in a court-ordered treatment program. MMM has lived the vast majority of her life with Father. Father and Stepmother were married on December 29, 2012, and MMM has resided with both since then.
[¶ 4] The district court entered a joint custody order in January 2013, granting Father primary physical custody of MMM, and granting Mother visitation by telephone every Tuesday from 5:00 to 6:00 p.m. for six months, with any other visitation at Father's discretion. The order set Mother's child support obligation at $50 per month, and gave her the right to petition for modification of both visitation and child support after six months. Mother never petitioned to modify visitation or child support.
[¶ 5] From the date of the order through the date the petition for adoption was filed (except for nine months from January 8 to October 13, 2016, and four days in June of 2016), Mother has been incarcerated or in inpatient treatment for her drug addiction. Mother's contacts with MMM consisted of phone calls and letters from prison and phone calls during the brief period when she was not incarcerated. Mother agreed that her phone calls have been inconsistent, but testified that both she and Father share in the responsibility for those inconsistencies. Sometimes Father and Stepmother would not allow contact with MMM and, according to Mother, "this would go on for extended periods of time, and then I would get a letter saying it was okay to call again, and ... I would initiate phone calls." Mother explained that Father and Stepmother would ask her not to call when they were visiting extended family in Arizona. And, while she was incarcerated, it was difficult to make consistent calls because she was not always available at the time she was supposed to call, but that "at all times, [she] was doing what [she] could." Mother also explained that she had talked with Father, trying to rekindle their relationship, probably 15 to 20 times between January 2016 and October 2016. During that time frame, she spoke to MMM "about 12" times. She testified, "When I was supposed to call, I would call. Sometimes I was working and I didn't. And then after [Father] and I had a dispute on personal matters, it got awkward between us. And I, at that time, had started using, and I quit attempting to make contact."
[¶ 6] With respect to her relationship with MMM, Mother explained:
At this point, I'm at a very pivotal point in my life and in my drug addiction. Instead of going and doing my time this time, I have voluntarily went into a program that is brutal.... This time is different. I am at a different place....
I at no point have agreed to or want to have my rights terminated....
Like this is my last chance.... And the only thing I have is the knowledge that I have to try to fight for myself as a parent for my daughter.
[¶ 7] Father testified that Mother's contact with MMM was "sporadic" and that when she did not call as scheduled, "she would say it was because they were on lockdown or whatever reason." He described contact while Mother was in prison as being "good for two, three weeks straight, and then it might not be for a month or two months, and then we'd get one here, one there." During the time Mother was not in prison, the times for Mother's calls changed to accommodate MMM's dance schedule and "for two months, [Mother] was on point calling ... and then all of a sudden nothing again." Mother told Father that the scheduled time conflicted with her work schedule so, again, they *493 changed the time, but "she never tried to call again." Father also testified that Mother never sent MMM a birthday card, or anything for her birthday or Christmas, and that Mother had not called since the adoption petition was filed.
[¶ 8] Occasionally, while she was incarcerated, Mother held jobs and made approximately 30 cents an hour, but the record does not indicate the total amount she earned. In 2014, Mother's grandmother gave her some money, but the amount and frequency of those gifts are not contained in the record either. During the nine months when she was not confined, Mother worked part-time as a seasonal flagger for a road construction company and earned approximately $200 at that job. Mother made one $50 child support payment in January 2013 and has made no other support payments. Mother contributed nothing toward child support from her income at any of her jobs or from the money her grandmother gave her. Mother admitted that she "could have prioritized and sent money to [MMM]; however, when I spoke to [Father] about it, he ... stated they were not hurting for money, and that it wasn't that big of a deal."
[¶ 9] Father and Stepmother petitioned for a decree of adoption in favor of Stepmother, without the consent of Mother, alleging that Mother willfully abandoned MMM and willfully failed to provide court-ordered child support. The district court found that Father and Stepmother failed to demonstrate by clear and convincing evidence that Mother intended to abandon MMM or that Mother's failure to pay child support was willful. This timely appeal followed.
STANDARD OF REVIEW
[¶ 10] The decision to grant or deny an adoption without parental consent is within the discretion of the district court. In Interest of SO , 2016 WY 99, ¶ 10, 382 P.3d 51, 54 (Wyo. 2016) ; In re Adoption of JRH , 2006 WY 89, ¶ 13, 138 P.3d 683, 686 (Wyo. 2006).
"In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did." GWJ v. MH (In re BGH) , 930 P.2d 371, 377-78 (Wyo. 1996) (quoting Martinez v. State , 611 P.2d 831, 838 (Wyo. 1980) ). "A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances." GWJ , 930 P.2d at 377.
SO , 2016 WY 99, ¶ 11, 382 P.3d at 54. We must determine whether the evidence is sufficient to support the decision of the district court and, in reviewing the evidence, "we accept the successful party's submissions, granting them every favorable inference fairly to be drawn and leaving out of consideration conflicting evidence presented by the unsuccessful party." Id . (quoting Basolo v. Basolo , 907 P.2d 348, 353 (Wyo. 1995) ).
DISCUSSION
[¶ 11] Father and Stepmother sought the adoption of MMM pursuant to two statutory provisions: Wyo. Stat. Ann. § 1-22-110(a)(iii) (willful abandonment) and Wyo. Stat. Ann. § 1-22-110(a)(iv) & (ix) (willful failure to pay child support). The district court concluded that they had failed to establish the requirements of either statute by clear and convincing evidence. Father and Stepmother argue that the district court abused its discretion. We first examine whether the district court abused its discretion when it found that Father and Stepmother did not prove Mother willfully abandoned MMM. We will then turn to the question of whether the district court abused its discretion when it concluded that Father and Stepmother did not prove that Mother willfully neglected to pay child support.
I. Did the district court abuse its discretion when it found that Father and Stepmother failed to demonstrate by clear and convincing evidence that Mother willfully abandoned MMM?
[¶ 12] Wyo. Stat. Ann. § 1-22-110(a)(iii) (LexisNexis 2017) provides that "the adoption of a child may be ordered without the written consent of a parent ... if the court finds that the ... nonconsenting parent or parents have: (iii) Willfully abandoned or deserted the child." A finding of "willful abandonment" requires the manifestation of an actual intent to sever parental *494 relations. In re Adoption of TLC , 2002 WY 76, ¶ 16, 46 P.3d 863, 870 (Wyo. 2002) (citing In re Adoption of Voss , 550 P.2d 481, 487 (Wyo. 1976) ). "A certain degree of parental inattention, neglect or temporary absence is not enough to establish willful abandonment." Id . at ¶ 15 (citing In re Adoption of Female Child X , 537 P.2d 719, 721 (Wyo. 1975) ; In re Adoption of Strauser , 65 Wyo. 98, 196 P.2d 862, 868 (1948) ). Further, incarceration does not toll "a nonconsenting parent's familial obligations; however, when determining 'abandonment,' the trial court should consider whether an incarcerated nonconsenting parent, unable to fulfill the customary parental duties of an unrestrained parent, has nonetheless pursued the opportunities and options which may be available to carry out such duties to the best of his or her ability." TLC , ¶ 17, 46 P.3d at 870. In addition,
because the right to associate with one's child is a fundamental right protected by the Wyoming and United States Constitutions, adoption statutes are strictly construed when the proceeding is against a nonconsenting parent, and every reasonable intendment is made in favor of that parent's claims. [ In re Adoption of CF , 2005 WY 118, ¶ 11, 120 P.3d 992, 999 (Wyo. 2005) ]. "[T]he party requesting adoption bears the burden of proving the existence of at least one of the statutory factors by clear and convincing evidence." Id. We have defined clear and convincing evidence as "that kind of proof which would persuade a trier of fact that the truth of the contention is highly probable." Id.
In re Adoption of JRH , 2006 WY 89, ¶ 13, 138 P.3d 683, 686-87 (Wyo. 2006). "Adoptions can occur without the consent of a parent only under certain statutorily delineated circumstances. Because of the fundamental liberty interest at stake, the applicable statutes must be strictly construed." TLC , ¶ 11, 46 P.3d at 868.
[¶ 13] The district court relied upon TLC in reaching its conclusion that Father and Stepmother failed to demonstrate willful abandonment by clear and convincing evidence. There, the district court determined that TLC's father, who had been incarcerated for a portion of the time at issue, willfully abandoned TLC. TLC , 2002 WY 76, ¶ 15, 46 P.3d at 869. The father had "sporadic contact" with TLC over her lifetime and he failed to exercise regular visitation while he was not incarcerated. Id . at ¶ 15, 46 P.3d at 870. However, while he was in prison, the father telephoned TLC monthly and wrote occasional letters. We reversed, explaining that monthly telephone calls and occasional letters indicated that the father was attempting "to maintain contact with his daughter to the best of his ability while incarcerated." Id . at ¶ 17, 46 P.3d at 870. We held that the facts, as found by the district court, "indicat[ed] that Father attempted to maintain contact, and at least while incarcerated did maintain consistent contact, with his daughter." Id . at ¶ 19.
[¶ 14] The district court here found that Mother's "contacts with MMM were sporadic at best," but concluded that Father and Stepmother "failed to demonstrate by clear and convincing evidence that [Mother] has evidenced an intent to sever her parental relationship with MMM." This finding is adequately supported by the record. Like the father in TLC , Mother's sporadic contact-her telephone calls and letters from prison-show that she attempted to maintain contact with MMM. Many of Mother's lapses in communication with MMM resulted from restrictions associated with her incarceration and her work schedule. In addition, not all the blame rests on Mother, as Father and Stepmother requested that Mother not call during certain periods of time.
[¶ 15] Father and Stepmother argue that because Mother quit trying to contact MMM sometime in 2016, she willfully abandoned her. Abandonment requires "conduct by the parent ... 'which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child.' It involves more than temporary absence or neglect of parental duty." Voss , 550 P.2d at 486-87 (quoting Strauser , 65 Wyo. 98, 196 P.2d at 868 ). Here, Mother admitted that she ceased contacting MMM after she had "started using" again. The district court did not discuss this when it concluded that Father and Stepmother failed to prove Mother abandoned *495 MMM. However, examining the facts in the light most favorable to Mother, as we are required to do under our standard of review, we conclude that Mother's failure to contact MMM while she was using drugs was a temporary neglect of her parental duty, not a fact that established a "settled purpose" to "relinquish all parental claims" to MMM.
[¶ 16] The district court did not abuse its discretion when it concluded that Father and Stepmother failed to show willful abandonment by clear and convincing evidence, as required by Wyo. Stat. Ann. § 1-22-110(a)(iii).
II. Did the district court abuse its discretion when it found that Father and Stepmother failed to demonstrate by clear and convincing evidence that Mother willfully failed to pay child support during the relevant period?
[¶ 17] Adoption may be ordered without the consent of a parent if the court finds that the nonconsenting parent:
(iv) Willfully failed to contribute to the support of the child for a period of one (1) year immediately prior to the filing of the petition to adopt and has failed to bring the support obligation current within sixty (60) days after service of the petition to adopt; or
....
(ix) Willfully failed to pay a total dollar amount of at least seventy percent (70%) of the court ordered support for a period of two (2) years or more and has failed to bring the support obligation one hundred percent (100%) current within sixty (60) days after service of the petition to adopt.
Wyo. Stat. Ann. § 1-22-110(a)(iv) & (ix) (LexisNexis 2017). It is undisputed that Mother's failure to pay child support could qualify under both these provisions as a basis for allowing adoption of MMM without her consent. The district court's decision turned on the question of whether Mother's failure to pay was willful. The district court concluded that it was not:
[Father and Stepmother] have failed to prove by clear and convincing evidence that [Mother's] failure to pay support was willful. [Mother] was incarcerated for all but 9 months of the relevant period. The Court concludes that her failure to pay while incarcerated was due primarily to her lack of ability to pay. For the brief period [Mother] was not incarcerated, she had limited means and to a certain extent may have been reassured by [Father] that she did not need to pay.
Father and Stepmother argue that this conclusion was an abuse of discretion because Mother's willfulness is shown by the fact that she earned some money working when she was not in prison and at her various jobs while she was incarcerated, and Mother's grandmother had sent her some money, yet Mother failed to make any contributions to her child support obligation.
[¶ 18] Father and Stepmother rely on In re Adoption of RMS , 2011 WY 78, 253 P.3d 149 (Wyo. 2011) and In re Adoption of AMP , 2012 WY 132, 286 P.3d 746 (Wyo. 2012), to support their contention that Mother's failure to pay child support was willful. In RMS , the district court granted the father and stepmother's petition for adoption. 2011 WY 78, ¶ 6, 253 P.3d at 150. On appeal, the mother asserted that the district court abused its discretion because the evidence showed that her failure to pay child support was not willful since she was unemployed and did not have the ability to pay. Id . at ¶ 13. The mother quit her job shortly after the child support order was entered, and, "although she testified that she applied for jobs after that, without success, she did not take other steps to improve her prospects of becoming employed such as registering with an employment service or finishing the GED program...." Id . at ¶ 16, 253 P.3d at 153. In addition, the mother received payment for babysitting her cousin's children, but did not pay any of that income toward child support even though her living expenses were paid by her parents. Id . We concluded that the district court had not abused its discretion when it concluded that the mother's failure to pay was willful. Id .
[¶ 19] In AMP , the father lived in his father's home, had part-time employment, and paid child support until he was terminated for "Job Abandonment."
*496 2012 WY 132, ¶ 4, 286 P.3d at 747. Eleven months later, he enlisted in the Air Force. Id . He failed to make child support payments during the interim when he was unemployed and was being supported by his father and, again, after his basic training had ended. Id . at ¶ 16-17, 286 P.3d at 751. The district court found that the father was not credible when he testified regarding his attempts to "create a 'military allotment.' " Id . at ¶¶ 17, 19, 286 P.3d at 751, 752. Relying, in part, on these credibility findings, the court concluded that the father's willful failure to make child support payments had been proved by clear and convincing evidence. Id . at ¶ 19, 286 P.3d at 752. On appeal, we concluded that the district court's decision was supported by the evidence:
[The father] did not make a reasonable effort to find employment and support his son. [The father] was unemployed for the entire year in 2010, but did not engage the assistance of a job service agency and did not seek to advance his employment prospects by enrolling in college courses or other job training programs. Further, despite [the father's] claim that he did not receive compensation during his time in basic training, the evidence unequivocally established that [the father] received military pay in March, before he was served with the adoption petition. He did not contribute any of that pay to his child support obligation. Additionally, [the father's] credibility was seriously undermined by his shifting testimony as to the timing of his attempt to create a military allotment and the fact that no child support payments had been made via allotment or otherwise as of the date of the adoption hearing, nearly a year after he completed basic training.
Id . at ¶ 20, 286 P.3d at 752-53 (citation omitted).
[¶ 20] Neither RMS nor AMP persuades us that the district court here abused its discretion when it concluded that Mother's failure to pay child support was not willful, particularly in light of the requirement that the district court make "every reasonable intendment" in favor of Mother. See In re Adoption of CF , 2005 WY 118, ¶ 11, 120 P.3d 992, 999 (Wyo. 2005). We must keep in mind that our review of these cases was for abuse of discretion and thus our decision was limited to an assessment of whether the district court could reasonably have concluded as it did. AMP , 2012 WY 132, ¶ 9, 286 P.3d at 748 ; RMS , 2011 WY 78, ¶ 7, 253 P.3d at 151.
[¶ 21] We have explained the importance of the willfulness requirement as follows:
Clearly, by inclusion of the modifying term "willfully" the statute draws a distinction, as it must, between the parent who though financially able to pay his court-ordered child support is unwilling to do so, and the parent who though willing to pay his court-ordered child support is financially unable to do so. "A natural parent's failure to support his or her child does not obviate the necessity of the parent's consent to the child's adoption, where the parent's financial condition is such that he or she is unable to support the child." 2 Am. Jur. 2d Adoption § 88 (1974).
Moreover, this court has defined willfully in the context of Wyo. Stat. Ann. § 1-22-110 as "intentionally, knowingly, purposely, voluntarily, consciously, deliberately, and without justifiable excuse, as distinguished from carelessly, inadvertently, accidentally, negligently, heedlessly or thoughtlessly." Matter of Adoption of CCT , 640 P.2d 73, 76 (Wyo. 1982).
In re Adoption of ADA , 2006 WY 49, ¶ 9, 132 P.3d 196, 200-01 (Wyo. 2006) (quoting TLC , 2002 WY 76, ¶¶ 27-28, 46 P.3d at 873 (some citations omitted) ). In determining willfulness, courts "look at whether the parent has demonstrated, through whatever financial means available to him, that the parent has not forgotten his statutory obligation to his child. Willfulness is rarely shown directly and there is often conflicting evidence on the element." RMS , 2011 WY 78, ¶ 14, 253 P.3d at 152 (citation omitted).
[¶ 22] Although "a parent's inability or lack of means to pay may refute an allegation of willful failure to pay child support, that does not mean a parent's unemployment, and resulting inability to pay child support, is always excusable." RMS , 2011 WY 78, ¶ 14, 253 P.3d at 152. "A parent has *497 the responsibility to pay child support in accordance with his or her financial ability." Id . Moreover, "[i]ncarceration, standing alone, does not provide the direct intent necessary to constitute willful failure to pay under the pertinent statute." TLC , 2002 WY 76, ¶ 34, 46 P.3d at 874. However, incarceration does not "provide[ ] total justification for nonpayment of child support." Id . at ¶ 36, 46 P.3d at 875. "[T]he focus must remain on the parent's intent and ability to pay. The courts should look at whether the parent has demonstrated, through whatever financial means available to him, that the parent has not forgotten his statutory obligation to his child." Id . ; ADA , 2006 WY 49, ¶ 14, 132 P.3d at 202 (citation omitted).
[¶ 23] Matter of Adoption of CCT , 640 P.2d 73 (Wyo. 1982) is instructive. There, the father had been incarcerated, but we found that he had the financial means to make child support payments during the time he was not confined. The father made one child support payment in accordance with the divorce decree. Id . at 75. In addition, he made several gifts to the children, including bicycles, a necklace, dolls, a quilt, flowers, and less than $40 in cash. Id . Father spent part of the relevant time period in prison and then a mental hospital for treatment, but during the time that he was not confined, he earned a total of $8,000 and had received $819 from worker's compensation. Id . at 76. However, he did not pay any child support from these earnings. Id . We again affirmed the district court's conclusion that, based on these facts, his "failure to contribute to the support of the children was not accidental, inadvertent or financially impossible-at least not during the year immediately prior to the filing of the petitions for adoption." Id . at 76.
[¶ 24] More recently, in ADA , 2006 WY 49, 132 P.3d 196, we affirmed the district court's denial of the stepfather's petition for adoption alleging that the father had willfully failed to provide child support. Id . at ¶ 4, 132 P.3d at 199. There, it was undisputed that the father had failed to comply with child support obligations set forth in the divorce decree. Id . at ¶¶ 3, 13, 132 P.3d at 199, 202. The father argued that his failure to pay was not willful; rather, he was unable to pay consistently because he had difficulty finding employment and was intermittently incarcerated on a variety of charges. Id . at ¶ 13, 132 P.3d at 202. The stepfather contended that the failure was willful because Uinta County's unemployment statistics did not support the father's claim that he could not find a job, the father failed to comply with contempt orders requiring him to obtain retraining to make him employable, and because the father spent his money on drugs and alcohol instead of child support. Id . at ¶¶ 17, 19, 132 P.2d at 202, 203. We concluded that while the "father's efforts to pay his child support certainly cannot be characterized as model and may have, at times, been willful," the district court did not abuse its discretion when it concluded that the stepfather did not meet his burden of establishing willfulness with clear and convincing evidence. Id . at ¶ 21, 132 P.3d at 203.
[¶ 25] The district court here concluded that Mother's "failure to pay while incarcerated was due primarily to her lack of ability to pay. For the brief period [Mother] was not incarcerated, she had limited means and to a certain extent may have been reassured by [Father] that she did not need to pay."
[¶ 26] Focusing on Mother's "intent and ability to pay," the facts in the record, when viewed in the light most favorable to Mother, and disregarding evidence to the contrary, support the district court's conclusion. Regarding Mother's intent, the district court relied upon Mother's testimony that Father told her that "they were not hurting for money, and that [child support] wasn't that big of a deal" when it concluded that "to a certain extent [Mother] may have been reassured by [Father] that she did not need to pay." We have consistently held that a custodial parent has no authority to waive child support. See , e.g. , Kimble v. Ellis , 2004 WY 161, ¶ 8, 101 P.3d 950, 953 (Wyo. 2004) ; Whitt v. State ex rel. Wright , 2001 WY 128, ¶ 19, 36 P.3d 617, 622 (Wyo. 2001) ; Hurlbut v. Scarbrough , 957 P.2d 839, 842 (Wyo. 1998). Child support is a legal obligation of parents to their children and support payments are "the children's money administered in trust by [the custodial parent] for their benefit." Kimble , ¶ 8, 101 P.3d at 953 (citations omitted).
*498 Accordingly, Father's statements regarding his financial condition and indicating that Mother's failure to make her child support payments was not a big deal could not have discharged Mother's obligation to pay support. Here, however, Mother's obligation to pay child support is not at issue; the issue is whether she willfully failed to meet that obligation. It was reasonable for the district court to rely upon Father's reassurances as a factor bearing upon Mother's intent to pay child support.
[¶ 27] The evidence also supports the district court's conclusion that Father failed to meet his burden of proof on Mother's ability to pay. The record establishes only that Mother earned approximately $200 during the nine months she was not incarcerated, may have earned some money while she worked during her confinement (the amount is not contained in the record), and received some unknown amount from her grandmother. Incarcerated individuals have an obligation to support their children, even in very modest amounts, from the amounts they earn or receive while in prison. However, the record here fails to show the amounts, if any, that Mother received or earned. The burden was on Father and Stepmother to establish that Mother had the financial means to make child support payments, and the record, viewed in the light required by our standard of review, does not support that conclusion. Based upon the facts in the record, and, given that we must view the evidence in the light most favorable to Mother, we cannot conclude that the district court acted in a manner which exceeds the bounds of reason when it found that Father and Stepmother did not prove by clear and convincing evidence that Mother willfully failed to pay her child support obligation.
CONCLUSION
[¶ 28] The district court did not abuse its discretion when it concluded that Father and Stepmother failed to establish the requirements of Wyo. Stat. Ann. § 1-22-110(a)(iii) (willful abandonment) and Wyo. Stat. Ann. §§ 1-22-110(a)(iv) & (ix) (willful failure to pay child support) by clear and convincing evidence. We affirm.