182 P.3d 501 (2008)
2008 WY 50
In the Matter of the Termination of Parental Rights to CW and CW, minor children: LJC, Appellant (Petitioner),
v.
HMW, Appellee (Respondent).
In the Matter of the Adoption of CW and CW, minor children: TLC and LJC, Appellants (Petitioners),
v.
HMW, Appellee (Respondent).
Nos. S-07-0157, S-07-0158.
Supreme Court of Wyoming.
April 30, 2008.
Representing Appellants: John A. Thomas, Evanston, Wyoming.
Representing Appellee: Farrah L. Spencer, Harris Law Firm, PC, Evanston, Wyoming.
Guardian Ad Litem (S-07-0158): Geoffrey James Phillips, Phillips Law, PC, Evanston, Wyoming.
Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.
BURKE, Justice.
[¶ 1] LJC ("Mother") and HMW ("Father") are the biological parents of CW1, born in 1998, and CW2, born in 2000. Mother *503 and Father never married. In 2002, Mother married TLC ("Husband"). In these two consolidated appeals, Mother and Husband challenge the district court's denial of their petition to adopt the two children, and Mother challenges the district court's denial of her petition to terminate Father's parental rights. We will affirm the district court's decisions.

ISSUES
[¶ 2] Mother and Husband raise these two issues:
1. Whether the district court abused its discretion and misapplied the law in denying the petition for adoption?
2. Whether the district court abused its discretion and misapplied the law in denying the petition for termination of parental rights?

FACTS
[¶ 3] It is undisputed that Mother and Father are the biological parents of two children, CW1 and CW2. When CW1 was born in 1998, Father was unemployed due to a disability. He helped care for CW1, along with Mother's other children. Father was able to begin working again in 2000. CW2 was born a short time later. Mother and Father finally ended their relationship in 2002.
[¶ 4] Father visited the children several times after the relationship ended, but the last time he saw them was on Thanksgiving of 2002, approximately a month after Mother married Husband. Father called again on Christmas of 2002, and asked to take the children for the morning. Mother refused on the basis of short notice, but offered that he could take them in the afternoon. He did not. During 2003, Father relates, he called Mother's home more than thirty times to talk to the children. His efforts were largely unsuccessful, and he apparently spoke to CW1 on the telephone only once during 2003. In short, Father has had very limited contact with his children after Mother and Husband were married.
[¶ 5] It is also clear that Father contributed little in the way of financial support for the children. He provided a vehicle for Mother's use for a period following their separation. He may have maintained health insurance coverage for the children, though the record suggests that this insurance lapsed at some time during 2006. Father has never paid any money to Mother for child support.
[¶ 6] This litigation commenced in June 2005, when Father filed a petition to establish his paternity of the two children. Father also asked the district court to set up a visitation schedule, and to set the amount he should pay for child support. Mother and Husband countered with a petition to adopt the children. Nearly a year later, Mother also filed a petition to terminate Father's parental rights.
[¶ 7] The district court consolidated the three matters, and held a hearing on them in December 2006. In April 2007, it entered two separate orders, one denying the petition by Mother and Husband to adopt the children, and another denying Mother's petition to terminate Father's parental rights. In August 2007, the district court entered a third order, affirming Father's paternity and establishing a visitation schedule and child support payments. Mother and Husband appeal the denial of their petition for adoption in Docket Number S-07-0158. Mother appeals the denial of her petition to terminate Father's parental rights in Docket Number S-07-0157.

DISCUSSION
Denial of Petition for Adoption
[¶ 8] "The power to grant or deny a petition for adoption is within the discretion of the trial court." In re Adoption of CF, 2005 WY 118, ¶ 10, 120 P.3d 992, 998 (Wyo.2005). We review the district court's decision for abuse of discretion. In re Adoption of JRH, 2006 WY 89, ¶ 13, 138 P.3d 683, 686 (Wyo.2006). The district court may grant an adoption without parental consent "provided all the statutory elements are satisfied." CF, ¶ 10, 120 P.3d at 998. However, "because the right to associate with one's child is a fundamental right protected by the Wyoming and United States Constitutions, *504 adoption statutes are strictly construed when the proceeding is against a nonconsenting parent, and every reasonable intendment is made in favor of that parent's claims." JRH, ¶ 13, 138 P.3d at 686. The party requesting an adoption therefore "bears the burden of proving the existence of at least one of the statutory factors by clear and convincing evidence." CF, ¶ 11, 120 P.3d at 999.
[¶ 9] Mother and Husband rely on two statutes in their petition to adopt the children. We start with Wyo. Stat. Ann. § 1-22-110, which establishes when a district court may grant an adoption without the consent of a parent. It states, in relevant part, that:
[T]he adoption of a child may be ordered without the written consent of a parent . . . if the court finds that . . . the nonconsenting parent or parents have:
. . .
(iv) Willfully failed to contribute to the support of the child for a period of one (1) year immediately prior to the filing of the petition to adopt and has failed to bring the support obligation current within sixty (60) days after service of the petition to adopt.
Wyo. Stat. Ann. § 1-22-110(a)(iv) (LexisNexis 2007). Father did not pay child support for a period exceeding one year prior to the filing of the adoption petition. He did not bring his child support payments current after the petition was served. The difficulty faced by the district court, however, was that Father had never been ordered to make any child support payments. Accordingly, the district court ruled "that because of the absence of a defined child support obligation and the duty of the Court to strictly construe the statutes against terminating a non-consenting parent's rights, the adoption cannot be granted." The district court also found that "it was impossible for [Father] to `bring the child support current' because it was impossible to state the amount of the obligation."
[¶ 10] Mother and Husband assert that Father was obligated to pay child support despite the lack of any court order to do so. Mother and Husband point out that Wyoming recognizes a common law duty of child support. See, e.g., Warren v. Hart, 747 P.2d 511, 514 (Wyo.1987) ("[E]ven if the divorce decree does not mandate support by a parent for the children, the absence of decree provision does not eliminate the intrinsic obligation."). They also cite another statutory provision, Wyo. Stat. Ann. § 1-22-110(a)(ix), which authorizes a court to approve an adoption without the consent of a parent if that parent has "[w]illfully failed to pay a total dollar amount of at least seventy percent (70%) of the court ordered support for a period of two (2) years or more." (Emphasis added.) Because this statutory section explicitly mentions court-ordered support, while Wyo. Stat. Ann. § 1-22-110(a)(iv) does not, Mother and Husband argue that the latter statutory provision implicitly indicates that a parent has an obligation to pay child support even if not subject to a court order.
[¶ 11] Further, Mother and Husband strongly rely on In re Adoption of GAR, 810 P.2d 113 (Wyo.1991) to assert that Father's failure to pay child support, despite the lack of a court order, provides grounds to approve an adoption without his consent. In GAR, the biological parents of four children got a divorce, and the decree specified that the father "shall be responsible for child support." 810 P.2d at 114. The decree did not specify any amount, however, at least in part because the district court did not have personal jurisdiction over the father at the time the divorce was granted. After the mother remarried, she and her husband petitioned to adopt the four children. The father objected, arguing that no child support amount was specified in the divorce decree, so that his failure to make any child support payments was not a willful failure to support his children. We rejected his argument, saying it "overlooks the obligation for parental support of minor children which exists absent a court ordered duty to do so." Id. at 115. We held that the father had a duty to contribute to the support of his minor children, court order or no, and that his failure to satisfy that obligation provided grounds for the district court to approve an adoption without the father's consent.
[¶ 12] We agree with Mother and Husband that, as in GAR, Father in the present *505 case had a child support obligation even without a court order. As in GAR, Father here failed to meet that obligation in any substantial way. However, there are two differences between GAR and the present case. First, after GAR was decided in 1991, the legislature amended Wyo. Stat. Ann. § 1-22-110(a)(iv) by adding the provision that an adoption may be granted over the objection of a parent if that parent "has failed to bring the support obligation current within sixty (60) days after service of the petition to adopt." 1992 Wyo. Sess. Laws ch. 84, § 1. The new statutory language does not excuse a parent from child support payments absent a court order, but as the district court observed, it is impossible to determine if the parent has brought the support obligation current unless the amount of that obligation has been established. Second, the mother in GAR had asked the father for child support payments, and he had refused. In contrast, Father in the present case asked the court to establish child support payments in his petition to establish paternity.
[¶ 13] In a case with factual circumstances similar to the current case, we said that:
This situation may be distinguished from prior cases where we held that a willful failure to support existed. For example, in GAR, the Mother specifically asked the nonconsenting putative father for assistance, which the father denied. GAR, 810 P.2d at 118-119. In [In re] Adoption of CCT, 640 P.2d 73, 74 [(Wyo.1982)], the father was under a court order to provide support. In this case, there was no request for assistance, nor was there a court order identifying Mother's contribution. We do not, by this decision, abandon the principal that every parent has a duty to contribute to the support of his or her child, whether ordered by a court or not. GAR, 810 P.2d at 115. In fact, we reaffirm it. However, we do not find clear and convincing evidence that Mother willfully failed to financially contribute to the support of the child in this case, and, therefore, we will not disturb the ruling of the district court.
In re Adoption of SMR, 982 P.2d 1246, 1250 (Wyo.1999) (emphasis, internal citations, and punctuation different from original). We also reaffirm that every parent has a duty to contribute to the support of his or her child, with or without a court order. Under the circumstances of this case, however, we will not disturb the district court's ruling that Father had not willfully failed to make child support payments or to bring them current.
[¶ 14] Most significantly, we note that the statute provides that "the adoption of a child may be ordered without the written consent of a parent" if the court finds that the parent willfully failed to make child support payments and to bring them current. Wyo. Stat. Ann. § 1-22-110(a)(iv) (emphasis added). We have commonly said that the word "may" in a statute "clearly indicates permissive authority." Billings v. Wyoming Bd. of Outfitters & Guides, 2001 WY 81, ¶ 37, 30 P.3d 557, 571 (Wyo.2001). Accordingly, even if the district court had concluded that one or more of the statutory factors had been met, it was still not required to order the adoption if it found other valid grounds for denying it. The other grounds relied upon by the district court were the best interests of the children.
[¶ 15] In the second statutory provision we consider, Wyo. Stat. Ann. § 1-22-108, the best interests of the children are factors for the district court to consider when deciding whether to grant a petition for adoption. This statute states, in relevant part:
If the putative father files and serves his objections to the petition to adopt . . . and appears at the hearing to acknowledge his paternity of the child, the court shall hear the evidence in support of the petition to adopt and in support of the objection to the petition and shall then determine whether:
(i) The putative father's claim to paternity of the child is established;
(ii) The putative father having knowledge of the birth or pending birth of the child has evidenced an interest in and responsibility for the child within thirty (30) days after receiving notice of the pending birth or birth of the child;

*506 (iii) The putative father's objections to the petition to adopt are valid; and
(iv) The best interests and welfare of the child will be served by granting the putative father's claim to paternity or by allowing the petition to adopt.
Wyo. Stat. Ann. § 1-22-108(c).
[¶ 16] The parties vigorously disagree about the best interests of the children. The record supports the claim of Mother and Husband that they have provided CW1 and CW2 with a good home and a stable environment. On the other hand, the district court noted other facts indicating that the best interests of the children would be served by preserving their relationship with Father. Specifically, the district court found that:
if the adoption is granted, the children will be deprived of the financial support that is due them from their natural father, and as the guardian ad litem noted, the children will be denied the opportunity of knowing their genetic father. Moreover, the ties developed between the adoptive father and the children will not be severed if the adoption is not granted.
The district court's decision letter demonstrates that it carefully weighed the conflicting evidence about the best interests of the children. It properly construed the law in favor of Father, and correctly noted that Mother and Husband had to support their petition for adoption with clear and convincing evidence. Thus, even though the district court found it "more probable than not that it is in the best interests of the children that the adoption be granted," it ultimately concluded that it was not clearly convinced that the adoption would be in the best interests of the children. We find no abuse of discretion in the district court's decision to deny the petition for adoption.
Denial of Petition for Termination of Parental Rights
[¶ 17] The second of these consolidated appeals involves Mother's petition to terminate Father's parental rights pursuant to Wyo. Stat. Ann. § 14-2-309. We have previously held that "the adoption statutes control over the more general provisions found in the paternity statutes." In re Adoption of BGH, 930 P.2d 371, 375 (Wyo.1996). Because the decision is "controlled by the adoption statutes and is not impacted by the statutes relating to paternity," analysis under the paternity statutes is "inapt." Id. With the petition for adoption pending, the district court would have been justified in dismissing Mother's petition to terminate Father's parental rights. However, because the district court denied the adoption, its further decision to deny Mother's petition to terminate Father's parental rights worked no prejudice against Mother. On that basis, we summarily affirm the district court's decision not to terminate Father's parental rights.