2012 WY 132

**In the Matter of the ADOPTION OF AMP, a minor child.**

**DLH, Appellant (Respondent),**

v.

**JLA and JJA, Appellees (Petitioners).**

No. S–12–0093.

Supreme Court of Wyoming.

Oct. 12, 2012.

Representing Appellant: John R. Hursh, Central Wyoming Law Associates, P.C., Laramie, Wyoming.

Representing Appellees: James A. Eddington, Jones & Eddington Law Offices, Torrington, Wyoming.

Before KITE, C.J., and GOLDEN,* HILL, VOIGT, and BURKE, JJ.

* Justice Golden retired effective September 30, 2012.

BURKE, Justice.

[¶ 1]   Appellant, DLH, challenges the district court's order granting the adoption of his four-year-old son, AMP, without Appellant's consent.   We affirm.

## ISSUE

[¶ 2]   The parties raise the following issue:

Whether the district court abused its discretion in granting JJA's adoption of AMP without Appellant's consent pursuant to Wyo. Stat. Ann. § 1–22–110(a)(iv), due to Appellant's willful failure to pay child support for a period of one year prior to the filing of the adoption petition, and his failure to bring his child support obligation current within 60 days after service of the petition.

## FACTS

[¶ 3]   Appellant and JLA are the biological parents of AMP, who was born on October 11, 2007.   They lived together for a period of time but never married.   Appellant moved to Mississippi to live with his father in June of 2009.   In July, 2009, an order was entered establishing paternity and requiring Appellant to pay $259.00 per month towards the support of AMP.

[¶ 4]   Shortly after his arrival in Mississippi, Appellant found part-time employment at a sporting goods store, and worked there until December, 2009, when he was terminated for "Job Abandonment."   He paid child support while employed, but stopped making support payments in January, 2010.   In November, 2010, Appellant enlisted in the United States Air Force.   He moved out of his father's home in January, 2011 to begin basic training, and he completed his training in March, 2011.   As of January, 2012, Appellant had not made a child support payment since January, 2010.

[¶ 5]   JLA and JJA began living together in August, 2010 and married in December of that year.   They maintain a home in Torrington, Wyoming, and AMP resides with them.

On March 4, 2011, JJA filed a petition in district court seeking to adopt AMP. JLA joined the petition. The petition alleged that Appellant's consent to the adoption was not required pursuant to Wyo. Stat. Ann. § 1–22–110(a)(iv) because he had willfully failed to contribute to the support of AMP for a period of one year immediately prior to the filing of the petition to adopt. Appellant was served with notice of the petition on April 6, 2011. He was also provided the statutorily required notice that he had 60 days to pay his past due child support obligation, which amounted to $5,064.68.

[¶ 6] Appellant responded to the petition by filing a note with the clerk of court, stating

I, [DLH], will not relinquish my rights as the father of [AMP]. I do not give permission to [JJA] to adopt [AMP].

For the past year I have not been able to pay my child support due to the fact that I was unemployed and could not find employment. I have recently joined the United States Air Force and graduated Basic Military Training on March 11. I am now receiving steady payment and plan to start making child support payments regularly.

Appellant did not otherwise appear in the action. A hearing was held and a final decree of adoption was entered on June 16, 2011. On September 19, 2011, Appellant filed a Motion to Set Aside Judgment and Final Decree of Adoption. The motion alleged that the decree should be set aside because Appellant was a member of the United States Air Force when served with the adoption petition and was entitled to appointment of counsel to represent him pursuant to 50 U.S.C. app. § 521. Appellees resisted the motion. After holding a hearing, the district court granted the motion and set aside the decree of adoption.

[¶ 7] Subsequently, Appellant obtained counsel and filed an answer contesting the allegations in the petition. A trial was held on February 17, 2012. Although he conceded that he had not paid any child support for more than one year prior to the filing of the petition, he contended that the failure to make the support payments was not willful. He also conceded that he had not paid the arrearages within 60 days of service of the petition to adopt, but contended that the failure to pay arrearages was also not willful.

[¶ 8] On February 22, 2012, the district court issued a decision letter finding in favor of Appellees. The district court concluded that clear and convincing evidence established that the adoption should be granted without consent due to Appellant's willful failure to pay child support from March, 2010 to March, 2011, and his failure to bring the support obligation current within 60 days after service of the petition in violation of Wyo. Stat. Ann. § 1–22–110(a)(iv). The Final Decree of Adoption was entered on February 28, 2012. Appellant timely filed this appeal.

### STANDARD OF REVIEW

[¶ 9] If all statutory elements are met, the power to grant or deny a petition for adoption is within the sound discretion of the district court, and we will not disturb the court's decision absent a clear abuse of that discretion. *In re Adoption of SDL*, 2012 WY 78, ¶ 6, 278 P.3d 242, 244 (Wyo.2012). In determining whether there has been an abuse of discretion, the ultimate question is whether the court could reasonably have concluded as it did. *Id.* Our review also entails an evaluation of the sufficiency of the evidence to support the district court's decision. *JO v. State, Dep't of Family Servs. (In the Interest of RE)*, 2011 WY 170, ¶ 11, 267 P.3d 1092, 1096 (Wyo.2011). We apply our traditional principles of evidentiary review when a party challenges the sufficiency of the evidence supporting an adoption without consent. On appeal, the evidence is examined in the light most favorable to the party prevailing below, assuming all favorable evidence to be true while discounting conflicting evidence presented by the unsuccessful party. *EOS v. JLS (In re Adoption of RMS)*, 2011 WY 78, ¶ 8, 253 P.3d 149, 151 (Wyo.2011).

### DISCUSSION

[¶ 10] JJA and JLA petitioned for adoption without Appellant's consent pursuant to Wyo. Stat. Ann. § 1–22–110(a)(iv) (LexisNex-

is 2009), which provides, in relevant part, as follows:

§ 1–22–110. **When adoption permitted without consent.**

(a) ... [T]he adoption of a child may be ordered without the written consent of a parent or the putative father if the court finds that ... the nonconsenting parent or parents have:

...

(iv) Willfully failed to contribute to the support of the child for a period of one (1) year immediately prior to the filing of the petition to adopt and has failed to bring the support obligation current within sixty (60) days after service of the petition to adopt[.]

■ [¶ 11] A district court's determination that a parent's consent for an adoption is not required effectively terminates that parent's parental rights. *In re RMS,* ¶ 10, 253 P.3d at 151. Because the right to associate with one's child is a fundamental right protected by the Wyoming and United States Constitutions, adoption statutes are strictly construed when the proceeding is against a nonconsenting parent, and every reasonable intendment is made in favor of that parent's claims. *MJH v. AV (In re JRH),* 2006 WY 89, ¶ 13, 138 P.3d 683, 686 (Wyo.2006). The party requesting adoption bears the burden of proving the existence of at least one of the statutory factors by clear and convincing evidence. *Id.* Clear and convincing evidence is "that kind of proof which would persuade a trier of fact that the truth of the contention is highly probable." *Id.,* ¶ 13, 138 P.3d at 686–87.

[¶ 12] Appellant concedes that he made no child support payments during the one-year period from March, 2010 to March, 2011. Indeed, Appellant acknowledged that his last support payment was a $56.00 payment made in January, 2010. He contends, however, that his non-payment of child support was not "willful," as required under Wyo. Stat. Ann. § 1–22–110(a)(iv). He claims that he was "willing to make his court-ordered child support payments but was financially unable to do so" because he was unable to find work. Appellant asserts that his enlistment in the military constituted an effort to better himself and provide for his son, and that from November, 2010 through March, 2011, he was "concentrating on succeeding in Basic Training and getting his career off to a favorable start." Appellant contends that he accrued pay while in Air Force basic training in January, February, and March of 2011, but asserts that he could not make his child support payments because he did not receive his pay until basic training was completed in March. Appellant further contends that his failure to bring his support obligation current within 60 days of the adoption petition does not satisfy Wyo. Stat. Ann. § 1–22–110(a)(iv) because "[p]erformance was impossible due to his economic status[.]"

■ [¶ 13] As used in the adoption statute, "willfully" means "intentionally, knowingly, purposely, voluntarily, consciously, deliberately, and without justifiable excuse, as distinguished from carelessly, inadvertently, accidentally, negligently, heedlessly or thoughtlessly." *ADA v. SA,* 2006 WY 49, ¶ 9, 132 P.3d 196, 201 (Wyo.2006). We recently examined the relationship between a parent's alleged "financial inability" to pay child support and the statutory standard of willful nonpayment in *In re Adoption of RMS.* In that case, mother claimed that her failure to pay child support was not willful because she was unemployed and did not have the ability to pay. *Id.,* ¶ 13, 253 P.3d at 152. In support of her assertion that "simple proof of her failure to pay is insufficient as a matter of law to justify terminating parental rights," mother cited to this Court's opinion in *TOC v. TND (In re TLC),* 2002 WY 76, ¶ 27, 46 P.3d 863, 873 (Wyo.2002), where we stated:

Clearly, by inclusion of the modifying term "willfully" the statute draws a distinction, as it must, between the parent who though financially able to pay his court-ordered child support is unwilling to do so, and the parent who though willing to pay his court-ordered child support is financially unable to do so. "A natural parent's failure to support his or her child does not obviate the necessity of the parent's consent to the child's adoption, where the parent's financial condition is such that he or she is

unable to support the child." 2 Am.Jur.2d *Adoption* § 88 (1994).[1]

In *RMS*, however, we concluded that the mother's interpretation of *TLC* was overly broad:

> Although we have stated that a parent's inability or lack of means to pay may refute an allegation of willful failure to pay child support, that does not mean a parent's unemployment, and resulting inability to pay child support, is always excusable. A parent has the responsibility to pay child support in accordance with his or her financial ability. *MJH* [*v. AV*, 2006 WY 89], ¶ 17, 138 P.3d [683,] 687 [ (Wyo.2006) ]; *TOC* [*v. TND*, 2002 WY 76], ¶ 36, 46 P.3d [863,] 875 [ (Wyo.2002) ]. In determining the willfulness of the parent's failure to pay, the "courts should look at whether the parent has demonstrated, through whatever financial means available to him, that the parent has not forgotten his statutory obligation to his child." *TOC*, ¶ 36, 46 P.3d at 875. Willfulness is rarely shown directly and there is often conflicting evidence on the element. Consequently, it is "within the district court's province to weigh the evidence and judge [the] credibility of the witnesses." *CJ* [*v. SA*, 2006 WY 49], ¶ 18, 132 P.3d [196,] 203 [ (Wyo.2006) ].

*Id.,* ¶ 14, 253 P.3d at 152. With respect to the facts in *RMS*, we noted that mother had voluntarily ended her employment shortly after the child support order was entered, thereby terminating her means of providing support. *Id.,* ¶ 16, 253 P.3d at 153. We also emphasized that "Although [Mother] testified that she applied for jobs after that, without success, she did not take other steps to improve her prospects of becoming employed such as registering with an employment service or finishing the GED program to enhance her education." *Id.* Further, we found it noteworthy that the mother received $100 for babysitting her cousin, but "did not pay any of that money toward her child support obligation, despite the fact that her parents were paying for her living expenses." *Id.* In light of these facts, we held that the district court did not abuse its discretion in concluding that clear and convincing evidence showed that the mother had willfully failed to support her child. *Id.,* ¶ 17, 253 P.3d at 153.

[¶ 14] In the present case, the evidence established that Appellant stopped making child support payments in January, 2010, shortly after termination of his employment with a sporting goods store near his father's home in Mississippi. Although Appellant claims that he did not "voluntarily" relinquish his employment, the record reveals that Appellant's employment was terminated for "Job Abandonment" on December 22, 2009, after he did not receive authorization for time off from the store manager. Appellant testified that he looked for employment from January to May, 2010, but that he was unable to find a job. He stated, however, that he did not enlist a job service agency to help him with his employment search. Additionally, although Appellant had enrolled at a community college in the fall of 2009, and took courses while he was employed part-time, he did not return to school in the spring of 2010 and did not seek other forms of training to improve his employment prospects.

[¶ 15] In May, Appellant became interested in joining the Air Force. Notably, however, Appellant did not enlist in the Air Force until November, approximately six months later. Appellant stated that, from May to November, he "was still looking for a part-time job, [but] didn't want to have to go in and tell [prospective employers] I need a job[,] and get the job[,] and then six months later say I have to quit because I am going into the military[.]" Appellant testified that he helped his extended family by babysitting and painting, but stated he did not ask to be compensated for this work. Further, despite the fact that Appellant was physically and mentally capable of working, and had free access to the use of his father's lawn mower, he testified that "There in Jackson[, Mississippi], there is a lot of lawn mowing business, and I couldn't find anybody that would have me mow their lawn." Appellant stated that

---

**1.** As we noted in *RMS*, the discussion in *TLC* related to use of the word "willfully" in subsection (ix) of Wyo. Stat. Ann. § 1–22–110(a), rather than subsection (iv). Nonetheless, we determined that the analysis in *TLC* was relevant in interpreting Wyo. Stat. Ann. § 1–22–110(a)(iv).

he did not mow his father's lawn because his father had not asked him to do so. During the time that Appellant lived in Mississippi, from June, 2009 to January, 2011, his father provided him with housing, food, utilities, and transportation, and occasionally provided money to use for entertainment or eating out. Appellant, however, did not use any of this money to contribute to his child support obligation. When asked how he spent his time, aside from communicating with an Air Force recruiter during the months of May to November, Appellant stated that he would "[h]ang around the house, help my dad clean up, anything he needed to do, needed around the house."

[¶ 16] In January, 2011, Appellant moved to Texas for basic training, which he completed in March. Pay stubs introduced at the adoption hearing indicated that Appellant had received over $2,000.00 from his employment with the Air Force in January and February. It is undisputed that Appellant did not contribute any of this pay to the support of his child. Appellant testified, however, that he did not receive any pay during his time in basic training. He stated that "I think what happened is when you go to basic [training], you can get kicked out of the basic if you don't meet the standard; so then I think they don't pay you until you actually graduate[.]" The district court determined that Appellant's testimony was not credible, and concluded that Appellant's pay stubs were the best evidence of his compensation during basic training. We note, however, that the district court's finding that Appellant received pay during this period is not critical to the analysis of whether Appellant's nonpayment was willful. Even if the district court had accepted Appellant's testimony, the court was still confronted with undisputed evidence that Appellant did not contribute any of his pay towards his child support obligation in March, when his basic training ended, or at any time prior to the adoption hearing in this case. Appellant's failure to pay his child support obligation in March, 2011, is especially significant in light of the fact that he was not served with the petition for adoption until April 6th.

[¶ 17] With respect to his failure to pay child support after his basic training ended, Appellant testified that he attempted to create a "military allotment" in March so that his child support payments would be automatically deducted from his paychecks. He stated that "I tried to set up an allotment, and the finance, they didn't have any—they don't—They are not exactly on top of things sometimes, and they messed up on my paperwork for it." He later testified, however, that "I talked to financing in Texas, and they wouldn't do it, and then the first time I was able to get it was in the fall [of 2011] to actually start the filing of the papers that I needed to set up the allotment." In answers to interrogatories, Appellant had stated that "My first attempt to put in place a military allotment was delayed this fall [2011], and I have restarted that process." As of the date of the hearing, no child support payments had been made from his military income by allotment or otherwise.

[¶ 18] When Appellant was asked why he did not submit his monthly child support obligation, or pay any of his arrearages in March or April of 2011, irrespective of his attempt to create an allotment, Appellant stated:

> I called to set up, trying to send money, and just send money; and they said I couldn't; I had to have a bank account; and they couldn't give me the bank account number. And then I had to set up an allotment for that. They wouldn't, per se, give me a bank account number to send money in to.

Appellant stated that he had not thought of obtaining a cashier's check or money order to submit his child support payment. While Appellant claimed that he had considered using money from his first military paycheck to pay child support, he acknowledged that this plan did not come to fruition. Further, although Appellant stated in answers to interrogatories that he had "received some money and will be sending it to the Court this morning," no payment had been made as of the hearing date, and Appellant testified that the funds he had planned to use to pay his child support were from an anticipated tax refund.

[¶ 19] The district court found that Appellant was not a credible witness, and summarized its findings with respect to Appellant's credibility in its decision letter:

21. The Court finds [DLH's] claims of seeking employment completely incredible. He did not consult any employment agency. He remained unemployed for over a year. He did not expand his job search [or] move to a location with jobs.

22. From January 11, 2011, to March 14, 2011, [DLH] was in basic training. He claimed that he was not paid for his time in basic training. When confronted with pay stubs showing he accrued $2,262 in wages prior to March 2011, [DLH] acknowledged that he must have been paid, but he was unable or unwilling to disclose when those payments occurred.

23. ... The Court finds that the pay stubs accurately reflect [DLH's] net income.

. . .

25. The Court in general finds [DLH] lacking in credibility, based on his attempts to mis-state his income for the Air Force, his incorrect explanation of his job termination, and his lack of effort at obtaining employment.

Based, in part, on these credibility findings, the court concluded that clear and convincing evidence established that Appellant had willfully ignored his obligation to support his son:

[DLH] willfully ignored his obligation to support his son. He abandoned a job which enabled him to pay support. Then he willingly accepted financial assistance from his father, but never passed along any of that assistance to his son. [DLH] claims that he looked for work, but in fact he never contacted an employment agency or office. He decided to enlist in the Air Force, and was content to not work while waiting for the right opportunity to open with the Air Force.

[DLH] did not petition to have his support obligation reduced. Although he performed some various services for family members, he determined not to ask them for pay. He did not contact the Court or [JLA] to arrange for some partial payment. Instead, [DLH] completely ignored his obligation to support A.M.P. from January [2010], to the present.

While in the Air Force, [DLH] received housing in addition to his net pay. He could have contributed significant portions of his net pay to support A.M.P. The Air Force paid [DLH] for his basic training, which ended [on] March 14, 2011. [DLH] did not contribute any of that pay to the support of A.M.P. The Air Force regularly paid [DLH] twice a month after he was served with notice of this case. [DLH] chose not to contribute any of that pay to the support of A.M.P.

Clear and convincing evidence establishes that [DLH] **willfully** failed to pay support for more than one (1) year before this petition was filed on March 4, 2011. He had a job which he abandoned. He did very little, if anything, to obtain employment. He could have paid some of [the] funds his father gave him to support, but chose not to do so. Likewise, he chose not to charge family members for babysitting or house painting. [DLH] was and is capable of working.

(Emphasis in original.)

[¶ 20] The district court's conclusion that Appellant willfully failed to contribute to the support of his child is supported by the evidence. As in *RMS,* the evidence shows that Appellant did not make a reasonable effort to find employment and support his son. *In re RMS,* ¶ 17, 253 P.3d at 153. Appellant was unemployed for the entire year in 2010, but did not engage the assistance of a job service agency and did not seek to advance his employment prospects by enrolling in college courses or other job training programs. Further, despite Appellant's claim that he did not receive compensation during his time in basic training, the evidence unequivocally established that Appellant received military pay in March, before he was served with the adoption petition. He did not contribute any of that pay to his child support obligation. Additionally, Appellant's credibility was seriously undermined by his shifting testimony as to the timing of his attempt to create a military allotment and the fact that no child support payments had been made via allot-

ment or otherwise as of the date of the adoption hearing, nearly a year after he completed basic training. We must ultimately defer to the district court's assessment of witness credibility. Despite Appellant's claim that his failure to pay child support was not willful, the evidence supports the district court's conclusion that Appellant had willfully ignored his obligation to support his child.

[¶ 21] The evidence also supports the district court's conclusion that Appellant failed to bring his child support obligation current within 60 days. This fact was undisputed. Nonetheless, Appellant attempts to argue that this non-payment was not willful. We note, however, that Wyo. Stat. Ann. § 1–22–110(a)(iv) makes no reference to "willfulness" in conjunction with the obligation to make up arrearages within 60 days. Rather, the statute states that adoption may proceed without the consent of a parent if the parent has "Willfully failed to contribute to the support of the child for a period of one (1) year immediately prior to the filing of the petition to adopt *and has failed to bring the support obligation current within sixty (60) days after service of the petition to adopt.*" (Emphasis added.) In the second clause of the statute, as opposed to the first, "failed" is not modified by the word "willfully," indicating that the obligation to bring child support payments current exists irrespective of the delinquent parent's state of mind. Because it is undisputed that Appellant did not pay his accumulated arrearages, we cannot find that the district court abused its discretion in determining that this element of Wyo. Stat. Ann. § 1–22–110(a)(iv) was satisfied.

[¶ 22] Affirmed.