# IN THE SUPREME COURT, STATE OF WYOMING

# 2020 WY 23

OCTOBER TERM, A.D. 2019

February 20, 2020

IN THE MATTER OF THE ADOPTION OF:
CJML and KDL, minor children,

CML and SRL,

Appellants
(Petitioners)

v.                                                                         S-19-0139

ADBL,

Appellee
(Respondent).

*Appeal from the District Court of Fremont County*
*The Honorable Norman E. Young, Judge*

*Representing Appellants:*
   Sky Phifer, Phifer Law Office, Lander, Wyoming.

*Representing Appellee:*
   Alexandria Zafonte, Joel M. Vincent Law Office, Riverton, Wyoming.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]	CML (Father) and SRL (Stepmother) petitioned the district court for adoption of CML and ADBL's (Mother) two minor children pursuant to Wyo. Stat. Ann. § 1-22-110(a)(ix).  Mother contested the adoption.  After a two-day bench trial, the district court denied the petition, and this appeal followed.  We affirm.

## *ISSUE*

[¶2]	Did the district court abuse its discretion in determining Mother's failure to pay 70% or more of the court-ordered child support for a two-year period was not willful?

## *FACTS*

[¶3]	Father filed for divorce in August 2013.  Mother tested positive for methamphetamine on the day of the temporary custody hearing, and the district court awarded Father temporary custody.  The divorce was finalized on May 5, 2014.  The stipulated divorce decree required Mother to pass biweekly drug tests for eight consecutive weeks.  It also stated that Mother would have visitation every other weekend and that the first two visits would be supervised.  Mother moved to Pinedale shortly after the district court entered the divorce decree.  Mother exercised unsupervised visitation while in Pinedale, though this was complicated by Father intermittently suspending visitation rights. In September 2014, Mother was charged with possession of a controlled substance.  Mother was arrested in November 2014 for a bond violation.  When Father called to arrange the Christmas visitation schedule, he learned she was in jail and suspended visitation.  Mother has not had visitation with her children since December 2014.  Mother moved from Pinedale to Riverton and then from Riverton to Casper to find better paying employment to meet her support obligation.  Mother also paid for and received multiple substance abuse evaluations in an effort to reinstate visitation.

[¶4]	Despite being employed and switching jobs to obtain higher paying employment, Mother is behind on child support and the district court twice held her in contempt for failure to meet her child support obligation.  On August 17, 2017, Father and Stepmother petitioned the district court to allow Stepmother to adopt Father and Mother's two minor children, based on Wyo. Stat. Ann. § 1-22-110(a)(ix) (willful failure to pay at least 70% of court-ordered support for a two-year period).[1]  The parties agreed that Mother failed to pay at least 70% of the court-ordered support for a period of two years or more, and that she failed to bring the support obligation current within sixty days after service of the petition for adoption.  However, the parties disagreed over whether the failure to pay the support

---

[1] Father and Stepmother initially petitioned on two grounds, Wyo. Stat. Ann. § 1-22-110(a)(iii) (abandonment) and § 1-22-110(a)(ix) (willful failure to pay at least 70% of court-ordered child support for a two-year period).  They later dropped the abandonment claim.

1

was willful. The district court determined that Mother's failure to pay was not willful and denied the petition.

## STANDARD OF REVIEW

[¶5]    We first address Appellants' argument that the district court erred as a matter of law in interpreting and applying Wyo. Stat. Ann. § 1-22-110(a)(ix). Appellants mischaracterize the district court's decision as a finding that Mother's failure to meet her support obligation was justified by her attempts to regain visitation, and then argue that finding was contrary to law because denial of visitation is not grounds for the nonpayment of child support. They contend this is an incorrect interpretation of the statute, thus requiring de novo review. It is undisputed that denial of visitation does not excuse a parent from payment of child support. *Broyles v. Broyles*, 711 P.2d 1119, 1128 (Wyo. 1985). However, the issue in this case is not whether Mother's failure to fully pay child support was justified because Father denied her visitation. *See In re Adoption of MMM*, 2018 WY 60, ¶ 26, 419 P.3d 490, 498 (Wyo. 2018). Rather, the issue is whether she *willfully* withheld support. The question of whether a parent willfully withheld support is not subject to de novo review.[2] *E.g.*, *MMM*, 2018 WY 60, ¶ 10, 419 P.3d at 493; *In re Adoption of AMP*, 2012 WY 132, ¶ 9, 286 P.3d 746, 748 (Wyo. 2012); *In re Adoption of RMS*, 2011 WY 78, ¶ 7, 253 P.3d 149, 151 (Wyo. 2011); *In re CW*, 2008 WY 50, ¶ 8, 182 P.3d 501, 503-04 (Wyo. 2008); *In re Adoption of JRH*, 2006 WY 89, ¶ 13, 138 P.3d 683, 686-87 (Wyo. 2006).

[¶6]    We have long held that the "decision to grant or deny an adoption without parental consent is within the discretion of the district court." *MMM*, 2018 WY 60, ¶ 10, 419 P.3d at 493 (citing *In Interest of SO*, 2016 WY 99, ¶ 10, 382 P.3d 51, 54 (Wyo. 2016)). In determining whether the district court abused its discretion, the ultimate question is whether it could reasonably decide as it did. *MMM*, 2018 WY 60, ¶ 10, 419 P.3d at 493. We must also determine whether the evidence is sufficient to support the district court's decision. *Id*. In reviewing the sufficiency of the evidence, "we accept the successful party's submissions, granting them every favorable inference fairly to be drawn and leaving out of consideration conflicting evidence presented by the unsuccessful party." *Id.* (quoting *SO*, 2016 WY 99, ¶ 11, 382 P.3d at 54).

[¶7]    A district court's decision to grant an adoption without a parent's consent "effectively terminates that parent's parental rights." *AMP*, 2012 WY 132, ¶ 11, 286 P.3d at 749. Because both the Wyoming and United States Constitutions protect the right to

---

[2] Appellants cite *In the Interest of ECH*, 2018 WY 83, ¶ 24, 423 P.3d 295, 303 (Wyo. 2018), and *In the Matter of the Adoption of TLC*, 2002 WY 76, ¶ 20, 46 P.3d 863, 871 (Wyo. 2002) in support of this assertion. However, the application of de novo review in those cases was to statutory construction, not to the question of willful failure to pay. *ECH*, 2018 WY 83, ¶¶ 23-24, 423 P.3d at 303 (interpreting whether Wyo. Stat. Ann. § 14-3-422(a) required the court to advise father of his right to counsel); *TLC*, 2002 WY 76, ¶ 20, 46 P.3d at 871 (interpreting Wyo. Stat. Ann. § 1-22-110(a)(ix) for the first time). Their standards of review do not govern this issue.

associate with one's child, adoption statutes are "strictly construed when the proceeding is against a nonconsenting parent, and every reasonable [inference] is made in favor of that parent's claims." *Id*. The party requesting the adoption must prove the existence of at least one of the statutory factors by clear and convincing evidence. *Id.* We have defined clear and convincing evidence as the "kind of proof which would persuade a trier of fact that the truth of the contention is highly probable." *Id*. (quoting *JRH*, 2006 WY 89, ¶ 13, 138 P.3d at 686-87).

## *DISCUSSION*

[¶8]    Father and Stepmother petitioned for adoption under Wyo. Stat. Ann. § 1-22-110(a)(ix).  That provision allows the district court to order

> (a)    [T]he adoption of a child . . . without the written consent of a parent  . . . if the court finds that the nonconsenting parent . . . [has]:
>
> . . .
>
> (ix)    Willfully failed to pay a total dollar amount of at least seventy percent (70%) of the court ordered support for a period of two (2) years or more and has failed to bring the support obligation one hundred percent (100%) current within sixty (60) days after service of the petition to adopt.

Wyo. Stat. Ann. § 1-22-110(a)(ix) (LexisNexis 2019).

[¶9]    The parties agree that Mother failed to pay at least 70% of her child support obligation for the applicable time period (August 17, 2015 to August 17, 2017), and failed to bring the obligation current.[3] The only question is whether the failure to pay was willful. The district court concluded that Mother's failure to pay was not willful.  Analyzing Mother's intent and ability to pay, the district court found that

> 18.    [Mother] has been far from a model parent.  She has made many poor choices.  But she has never shown any indication or intent to abandon her children.  To the contrary, she has gone to considerable effort, and importantly she has gone to considerable expense to maintain contact, gain and

---

[3] The parties disagree whether the 70% number within Wyo. Stat. Ann. § 1-22-110(a)(ix) should include arrearages in the calculation.  We decline to decide that issue because, under either calculation, Mother failed to pay at least 70%.

3

maintain stable employment, and meet the somewhat unilateral demands of Petitioner so that she could exercise even regular visitation.

19. Similarly her efforts at paying her full child support obligation, " . . . cannot be characterized as model and may have, at times, been willful," *Matter of Adoption of MMM*, 2018 WY 60, ¶ 24, 419 P.3d 490, 497 (Wyo. 2018). She had the ability and means during the applicable period to pay more and could have met the 70% threshold that would have arguably avoided this contention.

20. However, her efforts to pay child support were complicated and made more difficult by her efforts to meet Petitioner's demands for a substance abuse evaluation that met his standards and her decision to spend money pursuing better, higher paying employment and adequate housing to meet [P]etitioner's standards in an effort to convince him to allow visitation.

21. As a fundamental right, the parental child relationship is strongly protected and is subject to strict scrutiny. . . .

22. In summary, Petitioner did not prove by clear and convincing evidence that [Mother]'s failure to pay 70% over the entire two-year applicable period was willful, that is, "intentionally, knowingly, purposely, voluntarily, consciously, deliberately, and without justifiable excuse, as distinguished from carelessly, inadvertently, accidentally, negligently, heedlessly or thoughtlessly . . ." *Matter of Adoption of MMM*, 2018 WY 60, ¶ 21, 419 P.3d 490, 496 (Wyo. 2018).

[¶10] Regarding willfulness, we have held that

[I]t should be obvious without extensive elaboration that the penalty of the forfeiture of one's parental rights cannot be imposed on the basis of strict liability through the application of a crude monetary equation. . . . Clearly, by inclusion of the modifying term "willfully" the statute draws a distinction, as it must, between the parent who though financially able to pay his court-ordered child support is unwilling to do so, and the

4

parent who though willing to pay his court-ordered child support is financially unable to do so.

*TLC*, 2002 WY 76, ¶ 27, 46 P.3d at 873. Here, "willfully" means "intentionally, knowingly, purposely, voluntarily, consciously, deliberately, and without justifiable excuse, as distinguished from carelessly, inadvertently, accidentally, negligently, heedlessly or thoughtlessly." *AMP*, 2012 WY 132, ¶ 13, 286 P.3d at 749. We recognize that "[w]illfulness is rarely shown directly and there is often conflicting evidence on the element. Consequently, it is 'within the district court's province to weigh the evidence and judge credibility of the witnesses.'" *RMS*, 2011 WY 78, ¶ 14, 253 P.3d at 152 (citation omitted).

[¶11]   A long line of cases guides our analysis of whether a parent willfully failed to pay a court-ordered support obligation. *MMM*, 2018 WY 60, 419 P.3d 490; *AMP*, 2012 WY 132, 286 P.3d 746; *RMS*, 2011 WY 78, 253 P.3d 149; *CW*, 2008 WY 50, 182 P.3d 501; *JRH*, 2006 WY 89, 138 P.3d 683; *In re Adoption of ADA*, 2006 WY 49, 132 P.3d 196 (Wyo. 2006); *In re Adoption of CF*, 2005 WY 118, 120 P.3d 992 (Wyo. 2005); *TLC*, 2002 WY 76, 46 P.3d 863; *In re Adoption of KJD*, 2002 WY 26, 41 P.3d 522 (Wyo. 2002); *In re Adoption of SMR*, 982 P.2d 1246 (Wyo. 1999); *Matter of Adoption of G.A.R.*, 810 P.2d 113 (Wyo. 1991); *Matter of Adoption of CJH*, 778 P.2d 124 (Wyo. 1989); *Matter of Adoption of CCT*, 640 P.2d 73 (Wyo. 1982). *ADA* and *MMM* are particularly instructive here. In *ADA*, the issue was whether an intermittently incarcerated father's failure to pay his court-ordered support was willful. 2006 WY 49, ¶¶ 8, 13, 132 P.3d at 200, 202. Father presented evidence that when he was not incarcerated, he looked for work but could not find steady employment and, thus, could not meet his support obligation. *Id*. at ¶ 13, 132 P.3d at 202. Father also presented evidence that he met his obligation when he found periodic work. *Id*. at ¶ 16, 132 P.3d at 202. The district court denied the petition, and this Court held that "[a]lthough our review is made more difficult because the district court did not make any express findings, the record is sufficient to support the district court's ultimate conclusion that stepfather had not proven by clear and convincing evidence father's failure to pay was willful." *Id*. at ¶ 18, 132 P.3d at 203. We reached this conclusion despite our finding that father's efforts to pay "may have, at times, been willful." *Id*. at ¶ 21, 132 P.3d at 203.

[¶12]   In *MMM*, we held that the district court did not abuse its discretion in finding that mother's failure to pay was not willful, especially considering the requirement that the district court give every favorable inference in favor of the nonconsenting party, and our standard of review. 2018 WY 60, ¶ 20, 419 P.3d at 496. There, the district court relied on the father's assurances to mother that she need not pay child support. *Id*. at ¶ 26, 419 P.3d at 498. As here, the issue was not whether mother had the obligation to pay child support but, rather, whether her failure to pay was willful. *Id.* There, we recognized that our case law holds that custodial parents have no right to waive child support. *Id.* at ¶ 26, 419 P.3d at 497. However, we determined that the district court reasonably relied on father's

5

assurances as a factor regarding mother's *intent* to pay child support. *Id.* at ¶ 26, 419 P.3d at 498. We also found that the record supported the district court's determination that the father and stepmother had not proven willful failure to pay by clear and convincing evidence. *Id*. at ¶ 27, 419 P.3d at 498. Quoting *ADA*, we again stated that the failure to pay "may have, at times, been willful." *MMM*, 2018 WY 60, ¶ 24, 419 P.3d at 497.

[¶13] Appellants argue that Mother's net income during the months in question illustrates that she had the financial ability to pay the full amount of her support obligation. They rely on two cases for the proposition that "[a] parent has the responsibility to pay child support in accordance with his or her financial ability." *RMS*, 2011 WY 78, ¶ 14, 253 P.3d at 152; *MMM*, 2018 WY 60, ¶ 22, 419 P.3d at 496-97. Both cases go on to identify the test for determining whether a parent's failure to pay was willful: "[t]he courts should look at whether the parent has demonstrated, through whatever financial means available to him, that the parent has not forgotten his statutory obligation to his child." *RMS*, 2011 WY 78, ¶ 14, 253 P.3d at 152; *MMM*, 2018 WY 60, ¶ 22, 419 P.3d at 497. Viewing the evidence in the light most favorable to Mother, ignoring evidence to the contrary, and focusing on Mother's "intent and ability to pay," we find that the evidence at trial was sufficient to support the district court's conclusion that Mother had not forgotten her statutory obligation to her children and that Father and Stepmother failed to prove Mother's willfulness by clear and convincing evidence.

[¶14] Mother testified that she tried to meet her obligation but, at times, was financially unable to do so. The record establishes that Mother was intermittently unemployed. Mother testified that she always called child support services when she switched employment to establish an automatic garnishment. She testified that she switched jobs often because she was always trying to make more money and that she tried to work multiple jobs at a time. Mother also testified that she sent extra money when she could in an effort to catch up on her support obligation. Mother testified that circumstances outside her control impacted her ability to meet her support obligation, especially her unreliable vehicles that she needed for transportation to and from work. Mother testified that she skipped meals at times and always prepared her meals at home to save money so she could pay child support.

[¶15] There was also evidence that Mother paid for several substance abuse evaluations to reestablish visitation. Appellants argue that the district court improperly relied on the cost of the substance abuse evaluations because only one occurred during the two-year time period. Additionally, they contend that no evidence supports the district court's finding that Mother spent money during the two-year period to find higher paying employment or to obtain adequate housing. However, the district court could reasonably rely on Mother's expenditures on substance abuse evaluations, housing, and pursuing better and higher paying employment, both during and outside the two-year period at issue, in evaluating her intent and ability to pay child support. The evidence was unambiguous about the timing of the various substance abuse evaluations, housing changes, and employment changes,

many of which were incurred by Mother in an attempt to meet Father's demands. It was reasonable for the court to rely on this information in evaluating Mother's intent and ability to pay child support. *See MMM*, 2018 WY 60, ¶ 26, 419 P.3d at 497-98. Viewing the evidence in the light most favorable to Mother and ignoring facts favorable to Appellants, we find that the evidence is sufficient to support the district court's finding that Mother's failure to meet her support obligation was not willful.

[¶16] Courts must stringently guard parents' fundamental right to associate with their children. *JRH*, 2006 WY 89, ¶ 13, 138 P.3d at 686. Mother strongly opposed terminating her parental rights and allowing Stepmother to adopt the children. Father and Stepmother had the burden of proving by clear and convincing evidence that Mother had willfully failed to pay at least 70% of her court-ordered support obligation for a period of two years. We cannot conclude that the district court abused its discretion when it found that Father and Stepmother failed to prove by clear and convincing evidence that Mother's failure to fully pay child support was willful.

[¶17] We affirm.